268 So.2d 916 (1972)
Thomas HUDSON
v.
J.D. McADORY, Sheriff of Hinds County, Mississippi.
No. 47224.
Supreme Court of Mississippi.
November 6, 1972.
Rehearing Denied December 4, 1972.
*917 John R. Poole, W.E. Gore, Jr., Jackson, for appellant.
A.F. Summer, Atty. Gen. by J.B. Garretty, Sp. Asst. Atty. Gen., Jackson, for appellee.
SUGG, Justice.
Appellant was bound over without bail to await the action of the Grand Jury on the charge of murder after a preliminary hearing in the County Court of the First Judicial District of Hinds County, Mississippi. Bail was also denied appellant by a Circuit Judge of Hinds County after a hearing on his petition for a writ of habeas corpus.
Appellant raises two issues on his appeal as follows:
(1) Since the United States Supreme Court has abolished capital punishment under existing statutes, the Mississippi Constitution gives a right to bond in all cases.
(2) Appellant's wife was not a competent witness against him, and without such testimony his guilt is not evident nor the presumption great within the meaning of the Constitution, and he is entitled to bail.
In three cases, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Jackson v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the United States Supreme Court in a five to four decision held that the imposition and carrying out of the death penalty in the cases before it constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States. In its order the Court stated:
The judgment in each case is therefore reversed insofar as it leaves undisturbed the death sentence imposed, and the cases are remanded for further proceedings. (Decision rendered June 29, 1972.) (408 U.S. at 239, 92 S.Ct. at 2727, 33 L.Ed.2d at 350.)
Chief Justice Burger in the opening paragraph of his dissenting opinion summarized the holding of the majority of the Court in their separate opinions as follows:
At the outset it is important to note that only two members of the Court, Mr. Justice Brennan and Mr. Justice Marshall, have concluded that the Eighth Amendment prohibits capital punishment for all crimes and under all circumstances. Mr. Justice Douglas has also determined that the death penalty contravenes the Eighth Amendment, although I do not read his opinion as necessarily requiring final abolition of the penalty. For the reasons set forth in Parts I-IV of this opinion, I conclude that the constitutional prohibition against "cruel and unusual punishments" cannot be construed to bar the imposition of the punishment of death.

*918 Mr. Justice Stewart and Mr. Justice White have concluded that petitioners' death sentences must be set aside because prevailing sentencing practices do not comply with the Eighth Amendment. For the reasons set forth in Part V of this opinion, I believe this approach fundamentally misconceives the nature of the Eighth Amendment guarantee and flies directly in the face of controlling authority of extremely recent vintage. (Decision rendered June 29, 1972.) (408 U.S. at 375, 92 S.Ct. at 2796-2797, 33 L.Ed.2d at 427-428.)
The decision binds this Court to the extent that statutes of Mississippi providing for capital punishment in certain classes or categories of crime are constitutionally unenforceable.
Appellant contends that since the infliction of the death sentence for murder constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, the exception from granting bail for capital offenses contained in Article 3, Section 29 of the Mississippi Constitution of 1890[1] is thereby nullified because capital offenses no longer exist. Stated differently, appellant urges that Section 29 should be construed to read, "Excessive bail shall not be required, and all persons shall, before conviction, be bailable by sufficient sureties."
Since the establishment of the Mississippi Territory the provision for bail for all persons before conviction except for capital offenses when the proof is evident or presumption great, now appearing in Section 29 of the Mississippi Constitution has been an integral part of the law of this State.
A brief review of history reveals that, by an Act dated April 7, 1798, the Congress of the United States authorized the President to establish in the Mississippi Territory a government in all respects similar to that then exercised in the territory northwest of the Ohio River.
In Street v. State, 43 Miss. 1 (1870), this Court stated:
Perhaps the original of the section in our bill of rights, and in the constitutions of nearly all the states, is a clause in the ordinance of 1787 for the government of the territory northwest of the river Ohio. This ordinance was mainly prepared by Mr. Jefferson, it is said. The words of the ordinance are: "All persons shall be bailable, unless for capital offenses, where the proof shall be evident or the presumption great." ... (43 Miss. 1 at 25.)
By Act of Congress of the United States adopted March 1, 1817, the inhabitants of the western part of the Mississippi Territory were authorized to form for themselves a Constitution and state government and to assume a name for the state; that such state when formed be admitted into the union upon the same footing with the original states, in all respects; that a constitutional convention should be held on the first Monday of July, 1817 in the town of Washington to form a constitution and state government.
As authorized by this Act of Congress, a convention was held and the Constitution of 1817 was the result thereof. Section 17, Article 1 of the Constitution of 1817 contained the following provision:
That all prisoners shall, before conviction, be bailable by sufficient securities, except for capital offences, when the proof is evident or the presumption great; and the privilege of the writ of habeas corpus shall not be suspended unless when, in case of rebellion or invasion, the public safety may require it.
This Court in Street, supra, pointed out that under the common law, the court of *919 kings' bench and the judges authorized to hear and determine a case on habeas corpus had the power and discretion to grant bail to all persons for all offenses, without regard to the degree of the crime or the nature of the punishment. This power to grant bail in a capital case was as unquestioned under the common law as when the punishment did not reach to the life of the accused.
The constitutional provision under consideration in its present form and as originally incorporated in the jurisprudence of the Mississippi Territory changed the common law in two important aspects: (1) Judges could not refuse bail in cases less than capital before conviction, and (2) judges could not grant bail before conviction in capital cases when the proof was evident or the presumption great.
During the time that Mississippi was a territory and at the time of the adoption of the Constitution of 1817 many crimes were punishable by death. See Mississippi Statutes 1816, pages 212, 213, 214, 216, 218 and 220. In all cases punishable by death, no lesser punishment was permitted until 1875 when the Legislature adopted an act authorizing a jury to declare the punishment could be life imprisonment rather than death.[2]See Ex Parte Fortenberry, 53 Miss. 428 (1876).
The Legislature has, from time to time, changed the offenses which are punishable by death, and at the time of the decision of Furman, supra, the following crimes were punishable by death in Mississippi: Murder, Section 2217 Mississippi Code 1942 Annotated (1956); Unlawful Use of Explosives, Section 2143 Mississippi Code 1942 Annotated (1956); Rape, Section 2358 Mississippi Code 1942 Annotated (1956); Kidnapping, Section 2238 Mississippi Code 1942 Annotated (1956); Treason, Section 2397 Mississippi Code 1942 Annotated (1956); Armed Robbery, Section 2367 Mississippi Code 1942 Annotated (1956); Accessories Before the Fact to the Above Crimes, Section 1995 Mississippi Code 1942 Annotated (1956).
Since the death penalty provision of the Mississippi Homicide Statute is unenforceable under the holding of Furman, supra, there is thrust upon this Court the question of deciding whether or not bail shall be denied before conviction in "capital offenses when the proof is evident or the presumption great."
Appellant urges that he is automatically, as a matter of right, entitled to bail before conviction because he is being held on a charge of murder which is no longer a capital offense. We are thus asked to hold meaningless the words "capital offenses" as they appear in Section 29 of our Constitution. If the words are meaningless in the constitutional provision under consideration, it is equally as logical to hold that said words and similar words are also meaningless as they appear in numerous statutes of this State.
Matters pertaining to procedure, punishment[3] and rights of persons charged *920 with "capital crimes" or "capital offenses," have been adopted from time to time by the Mississippi Legislature. If we hold that the term "capital offenses" as used in Section 29 of the Constitution has been nullified, unprecedented and unforeseen results would follow in construing the statutory law of this State where the same or similar terms are used. A few of the statutes that would be affected are discussed hereinafter.
If the contention of appellant were followed to a logical conclusion the number of peremptory challenges prescribed by Section 2520[4] Mississippi Code 1942 Annotated (1956) would be reduced from twelve to six, thus taking away from an accused a valuable right.
Section 1795[5] Mississippi Code 1942 Annotated (1956) provides that any person charged with a capital crime or with the crime of manslaughter is entitled to a special venire. Section 2505[6] Mississippi Code 1942 Annotated (1956) provides that persons indicted for capital crime shall have the right before the completion and drawing of a special venire to have a copy of the indictment and the list of the special venire summoned for his trial delivered to him or his counsel at least one entire day before the trial.
If we were to hold that capital crimes or capital cases referred to those only where the death penalty can now be inflicted, consistency would require us to deprive a defendant of the right of a special venire in cases formerly capital, but grant one if the charge was the lesser offense of manslaughter.
A logical extension of the argument of appellant would have the effect of deleting the special oath for jurors in "capital cases" *921 as provided by Section 2507 Mississippi Code 1942 Annotated (1956); would change the requirement of Section 2514 Mississippi Code 1942 Annotated (1956) providing that a motion for severance of persons jointly indicted for "capital cases" must be made before ordering a special venire; would repeal by judicial decision Section 2512 Mississippi Code 1942 Annotated (1956) which provides that a motion for change of venue in "capital cases" must be made before drawing a special venire; would limit the appointment of counsel for indigent persons charged with a "capital case" to one, instead of two as permitted by Section 2505-02 Mississippi Code 1942 Annotated (1956); would reduce the fees that could be paid attorneys representing indigent defendants in a "capital case" from $1,000 to $500.
Under Section 2017 Mississippi Code 1942 Annotated (1956), which has been a part of the law of this State in varying form since Hutchinson's Code of 1848, one charged with attempting to commit a capital offense may be punished by imprisonment in a penitentiary not exceeding ten years. The statute further provides that for other offenses the attempt to commit such offense shall be punished for a period, or for an amount, not greater than is prescribed for the actual commission of the offense so attempted.
A consistent holding that capital offenses did not refer to a classification of crimes would affect the sentence of one convicted of attempted murder so that the sentence would be life imprisonment rather than for a term not exceeding ten years, thus increasing the sentence, not by an Act of the Legislature, but by judicial decision.
The same situation would result under the armed robbery statute which provides that one convicted of robbery by the exhibition of a deadly weapon shall be punished by death if the penalty is so fixed by the jury, but where the jury fails to fix the penalty at death, the Court shall fix the penalty at imprisonment at the penitentiary for any term not less than three years. Thus, by judicial determination, rather than legislative enactment, the penalty for attempting to commit armed robbery would be changed, from a term of not more than ten years, to a term not less than three years, which would make it possible for one convicted of an attempt to commit armed robbery to be sentenced for a term of fifty years, or more.
It therefore becomes apparent that it is necessary to retain the classification "capital offenses," "capital crimes" and similar references so that utter chaos and confusion in the administration of criminal justice would not be the result of the abolition of the death penalty in certain classes and categories of crimes.
Appellant strongly urges that we should follow the reasoning of the recent case of State of New Jersey v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972), construing Article 1, Paragraph 11 of the Constitution of New Jersey which is substantially the same as Section 29 of the Mississippi Constitution of 1890.
The New Jersey court held that since the death penalty was invalidated by Furman, the New Jersey Constitution requires that all persons must be released on bail before conviction. The court further held that release on bail is not simply a formal or automatic matter, but enumerated factors to be considered in fixing the amount of bail, which factors if considered, when granting bail would insure the presence of the accused at his trial.
The only two states that have passed on the question presented to this Court have reached different conclusions. New Jersey in a decision after Furman, supra, has construed its constitution as permitting bail in all offenses before conviction. California in People v. Anderson, infra, a pre-Furman case, in a footnote[7] reserved the right *922 for further consideration of preconviction bail in capital cases, but denied bail in offenses formerly punishable by death, because the underlying gravity of the offenses endured and the determination of their gravity for the purpose of bail continued unaffected by its decision.
We are of the opinion that the proper approach is to apply the term "capital offenses," and similar terms appearing in our statutes, as a term designating a class of cases where the Legislature has authorized the infliction of the death penalty.
We are of the opinion that such treatment is necessary, not only to preserve and give meaning to the statutory law of this State, but also because neither Thomas Jefferson, who wrote the provision for bail for the government of the Northwest Territory, later incorporated as a part of the government of the Mississippi Territory, nor the framers of any of the Constitutions of the State of Mississippi which all contained a similar provision, had any fore-shadowing of the possibility that a court would declare the death penalty constitutionally unenforceable.
In the recent case of Peterson v. State, 268 So.2d 335, No. 46,821, we stated: "Punishment is essentially a legislative question", but also recognized that this Court had the power and authority to review punishment prescribed by the Legislature to determine if such punishment is permissible under our Federal and State Constitutions.
Historically the term "capital offense" has meant an offense punishable by death and in the recent case of Shorter v. State, 257 So.2d 236 (Miss. 1972) this Court stated:
Any case where the permissible punishment is death is a capital case, and in such cases the state and the defendant are each entitled to twelve peremptory challenges. Section 2217, Mississippi Code 1942 Annotated (1956).
The Constitution of Mississippi neither defines the term "capital offenses" appearing in Section 29 thereof, nor prescribes the punishment for these or any other crimes; therefore, the designation of "capital offenses" was left to the Legislature. The Legislature has done this by prescribing the death penalty as punishment for certain crimes. This designation by the Legislature is as effective today as before Furman. The classification of crimes *923 as capital is a legislative rather than a judicial function.
In order to retain the constitutional plan for the designation of capital offenses, we hold that a capital case is any case where the permissible punishment prescribed by the Legislature is death, even though such penalty may not be inflicted since the decision of Furman, supra.
Appellant's second assignment of error is without merit because if the testimony of the ex-wife of appellant is excluded, there remains sufficient evidence to support the finding on the petition for writ of habeas corpus that the proof was evident or the presumption great.
The record shows that, at the time of the homicide, appellant and his wife were divorced and appellant had appealed the divorce case to this Court. The record does not reflect whether such appeal is from the granting of the divorce, or if it is from the provisions of the decree dealing with alimony, child custody and support of such children.
Since the parties were divorced at the time of the homicide, the wife was competent to testify as to the acts of the husband.
For the foregoing reasons the denial of the writ of habeas corpus is affirmed.
Denial of writ of habeas corpus affirmed.
GILLESPIE, C.J., and SMITH, ROBERTSON and BROOM, JJ., concur.
RODGERS, P.J., and JONES, PATTERSON and INZER, JJ., dissent.
PATTERSON, Justice (dissenting).
To exalt a possible confusion in the statutes over the citizen's constitutional right to bail, liberty, before conviction is a step I think the Court need not take. I therefore respectfully dissent.
Appellant is accused of murder for which he has not been indicted. His confinement results from a preliminary hearing in which he was bound over to await the action of a grand jury. This appeal is from a judgment in a habeas corpus proceeding denying bail prior to indictment and trial. The primary issue here, as it was below, is the effect Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which abolished capital punishment, has upon Section 29 of the Mississippi Constitution (1890) which provides:
Excessive bail shall not be required; and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great.
The long history of the English speaking peoples' quest for freedom from oppression imposed by the harsh hand of the common law judges in denying pretrial bail is well stated in Street v. State, 43 Miss. 1 (1870), and in Davis v. State, 6 How. 399 (1842), and need not be repeated. It is sufficient to state that protection from tyranny was finally obtained through the English Bill of Rights and came to this country fresh upon the minds of our forefathers who likewise sought this protection through constitutional provisions believed to be inviolate.
The right to pretrial bail was general in all cases in the early years of this nation. By the time our state became a part of the Union it had engrafted, as had most states, an exception upon the right to bail by withdrawing the privilege from those accused in capital cases where the proof was evident and the presumption of guilt great. The underlying motive for denying bail in capital cases was to secure the accused's presence at the trial. It was thought that in a choice between hazarding his life before a jury and forfeiting his or his surety's property an accused would probably prefer the latter. But when life was not at stake and consequently the strong urge to flight was not present, the framers obviously *924 regarded the right to bail to be imperatively present. The rule and its exception has always been a part of our State Constitution.
The early difficulty in many states, and to a lesser degree here, of determining whether the presumption of innocence shadowing an accused prior to indictment was circumscribed in Ex Parte Wray, 30 Miss. 673 (1856), by permitting the accused to introduce evidence to negate the inference of guilt occasioned by the indictment. Thereafter, when a legislative enactment made life imprisonment an alternative punishment when recommended by the jury in a murder case, an argument was advanced in Ex Parte Fortenberry, 53 Miss. 428 (1876), that this amelioration of the statute withdrew murder from the status of a capital case and thus authorized bail without regard to whether the proof was evident or the presumption of guilt great. This contention was rejected by the Court in these words:
It is manifest that offences heretofore capital remain so, under this statute, but with discretion in the jury to award a different penalty. Death is the rule, imprisonment the exception. An indictment therefore, for a crime heretofore capital must still be regarded as an indictment for a capital offence; and it does not lose this character until the jury, in the exercise of the discretion vested in them, shall so declare. Prima facie, therefore, it must be treated by the courts as a capital indictment, until this discretionary power in the jury has been by them exercised. (53 Miss. at 432)
Though the appellant was unsuccessful in his bid for bail, nevertheless the principle was then imbedded in our jurisprudence that the punishment that may be imposed for a crime is determinative of whether the offense is capital or not. By our statement a crime heretofore capital did not lose this character until the jury, in the exercise of the discretion vested in them, directed punishment less than death. The legislature may also change the character of a capital case to noncapital by reducing the punishment to that less than death. Indeed, this appears to be the universal rule.
As recently as Shorter v. State, 257 So.2d 236 (Miss. 1972), we held that any case where the permissible punishment is death is a capital case. Significantly armed robbery was once a noncapital case, but was made capital by the legislature when provision for punishment by death was enacted in 1932. Conversely, arson, which was formerly a capital case in certain circumstances since death could be inflicted as punishment, was made a noncapital case by removing that penalty. The surrounding states[1], among others, define a capital case as one in which the death penalty may be imposed. There seems to be little doubt, if any at all, that the punishment and not the nature of the crime is dispositive of the issue of capital offense or noncapital offense.
It is my opinion therefore, that when the United States Supreme Court forbade the death penalty as a punishment for crime in Furman, supra, for whatever reason the various judges advanced, it very effectively excised from Section 29 of our Constitution the exception, "... except for capital offenses when the proof is evident or presumption great" theretofore imposed upon the rule. In State v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972), the Supreme Court of New Jersey in an opinion relating to this same question and with an almost identical constitution, came to the conclusion that since the crime for which the defendant there was indicted was no longer a capital offense, he was entitled to pretrial release. The Supreme Court of Florida in Donaldson v. Sack, 265 So.2d 499 (Fla. 1972), in wrestling with this same problem stated:
We have examined every reasonable avenue to uphold the several statutes and *925 rules insofar as they assert "capital offense," as we must do under the rule favoring validity unless clearly indicated otherwise. We are unable in the fact of existing authorities and logic to find support for the continuance of "capital offense" as heretofore applied. Accordingly, it must fall with the U.S. Supreme Court's holding against the death penalty as provided under present legislation. Our decision is compelled by that Court's action. (265 So.2d at 501)
These opinions are amply supported by authority as a cursory examination of them will reveal. These authorities include cases from those states wherein capital punishment had been abolished by the legislature. These cases construing the legislative impact upon the constitutional term "capital offense" held similarly to the New Jersey and Florida courts. In State v. Johnston, 83 Wash. 1, 2, 144 P. 944, 945 (1914), it is stated:
Since there is now no capital punishment in this state, there are no capital offenses... .
In State v. Pett, 253 Minn. 429, 432-433, 92 N.W.2d 205, 207 (1958), we find:
... Murder in the first degree is not a capital offense when it cannot be punished by death... .
Earlier cases from the United States Supreme Court defining "capital offense" support this rationale. They hold that the death penalty must be a possible punishment in all "capital cases." Fitzpatrick v. United States, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900); Rakes v. United States, 212 U.S. 55, 29 S.Ct. 244, 53 L.Ed. 401 (1909). Our Court is in accord. Shorter, supra. In Pett we note that there is also stated:
... When we abolished the death penalty for murder in the first degree, there no longer was any capital offense here. Our constitution has never been amended to keep pace with the change, nor has our statute been so amended. Of course, an amendment of the statute without an amendment of the constitution would be ineffective to deprive a defendant of rights which he is guaranteed under our bill of rights. (92 N.W.2d at 206)
From these authorities it is my opinion that the abolition of the death penalty leaves us powerless in the face of logic to maintain the fiction of a continued existence of "capital offenses" as set out in Section 29 of our Constitution.
The elimination of "capital offenses" from the Constitution does not of course destroy the entire rule. There presently remains of Section 29 the following:
Excessive bail shall not be required; and all persons shall, before conviction, be bailable by sufficient sureties... .
We have steadfastly ruled, as have other states, that the remaining consistent portions of statutes, when part is held invalid, shall be held constitutional if there is any reasonable basis for doing so and of course this would leave valid the remaining portion of a constitutional section.[2] Where words used in our Constitution are unambiguous, there is no room for construction. Neither the courts nor the legislature have a right to substitute for words used in the Constitution which have a well defined meaning, other words having a different meaning.
The right to amend the Constitution rests exclusively with the people and if, constitutionally, bail is to be withheld in cases formerly capital offenses, that change should be accomplished by an amendment to the Constitution. We have consistently held that statutes contended to be unconstitutionally vague or incapable of exact definition are to be construed by the words used therein in arriving at the legislative intent. Downes v. Crosby Chemicals, 234 So.2d 916 (Miss. 1970), and see *926 Green v. Weller, 32 Miss. 650 (1856), where we held that in this country the courts take judicial notice of our Constitution as the fundamental law of the land and that a rule of construction peculiarly applicable to a written constitution is that its provisions must be construed from the words used therein taken in their ordinary and familiar definitions.
In State Teachers College v. Morris, 165 Miss. 758, 144 So. 374 (1932), we were of the opinion that general words in a statute must be understood as used with reference to subject matter in the minds of the legislature and strictly limited to it and further that this rule applied with equal force to the construction of the words used in a constitution, stating:
... The subject-matter in the mind of the Convention which adopted the Constitution must be ascertained from the words used in the Constitution, their context, the purpose sought to be accomplished, and the circumstances surrounding the Convention at the time the Constitution was framed and adopted, proven within the rules of evidence so permitting, or of which the court can take judicial notice. (165 Miss. at 765, 144 So. at 377).
See also State ex rel. Hairston v. Baggett, 145 Miss. 142, 110 So. 240 (1926). With these rules of construction in mind and impelled by the obvious duty of the judiciary to obey the mandates of the Constitution, we are compelled to construe the remains of Section 29 of our Constitution according to its plain terms. In so doing we are of the opinion that all cases are now bailable prior to trial since capital offenses no longer exist. To deny bail in defiance thereof is to punish an accused before conviction, and to ignore the presumption of innocence which attends every citizen charged with crime  actions which are not tolerable under our system of justice. This does not mean, however, that release on bail is simply a formal or automatic matter depriving a trial judge of discretion. In this regard it is proper, I think, that we consider the purpose for which bail is granted. In Royalty v. State, 235 So.2d 718, 720 (Miss. 1970) we held:
... Since the purpose of allowing bail is to secure the presence of the accused at trial, the amount of bail to be required is governed largely by the character of the offense committed and the financial ability of the accused.
See also State v. Johnson, supra, 61 N.J. 351, 294 A.2d 245 as well as 18 U.S.C.A. § 3146(a) which expresses the federal notion that the purpose of bail is to reasonably assure the appearance of the accused when required. The present issue in all criminal cases where bail is requested are the factors that will assure the accused's presence for trial. The issue of whether the proof is evident and the presumption great which heretofore existed in capital cases is no longer an issue.
There is related in Johnson, supra, some of the factors that should be considered with regard to bail. They are, (1) the seriousness of the crime charged against the defendant, (2) the extent of the punishment prescribed by the legislature, (3) the defendant's criminal record if any and previous record on bail if any, (4) his reputation and mental condition, (5) the length of his residence in the community, (6) his family ties and relationships, (7) his employment status, record of employment and his financial condition, (8) the identity of responsible members of the community who would vouch for defendant's reliability and (9) any other factors indicating defendant's mode of life, or ties to the community bearing on the risk of failure to appear. I would not impose these as exact or the only standards to be used in the consideration of bail, but they are relevant, I think, to indicate that discretion is still left to the judges and that offenders accused of crimes which were formerly capital are not ipso facto put upon the streets *927 to prey upon others. The judicial discretion remains; only the issue in cases formerly capital has changed.
The appellant seeks bail by way of a constitutional right, a right undeniably paramount to the statute of the legislature, a right to be construed liberally in his favor. State v. Bates, 187 Miss. 172, 192 So. 832 (1940). Our fear that "chaos" in the statutes will result is insufficient, in my humble opinion, to redefine the Constitution. If it is to be changed, there is an orderly method for doing so and that is by the voice of the people in a constitutional amendment. Similarly, it would seem that the statutes could be readily corrected by amending those thought to be in jeopardy by the legislature which now convenes annually.
I think the redefinition of the Constitution under the compulsion expressed in the majority opinion "so that utter chaos and confusion in the administration of criminal justice would not be the result of the abolition of the death penalty in certain classes and categories of crimes" is unwarranted and totally without precedent other than an obiter dicta footnote found in People v. Anderson, 6 Cal.3d 628, 100 Cal. Rptr. 152, 493 P.2d 880 (Cal. 1972), a decision which we emphatically rejected in Peterson v. State, 268 So.2d 335, No. 46,821, 1972, not yet reported, wherein we stated:
No one would contend that capital punishment is the answer to the crime problem, but there is a serious question whether this is an appropriate time for the courts to experiment by abolishing a form of punishment that has the sanction of history. We cannot say that the statutes authorizing capital punishment are cruel in the constitutional sense.
It would seem that there is presently a serious question whether this is an appropriate time for the courts to experiment by circumventing normal procedures in construing the Constitution by joining hands with those courts which we have so frequently condemned as amending the Constitution by judicial fiat.
I would therefore reverse the judgment of the trial court and direct a trial to determine the amount of bond necessary to assure the accused's appearance for trial.
RODGERS, P.J., and JONES and INZER, JJ., concur in this dissent.
SMITH, Justice (specially concurring).
I concur in the foregoing opinion. The phrase "capital cases," within the meaning of the Mississippi Constitution, section 29, refers to that class of cases in which the Mississippi Legislature provided by statute that the death penalty might be imposed. These statutes were not repealed by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Furman prevents imposition of the death penalty through the interposition of federal power by the United States Supreme Court. The Mississippi statutes, therefore, continue to provide the authoritative definition of capital offenses and must be looked to by this Court in determining what crimes shall be considered capital and dealt with as such, excepting only, that the power to impose the punishment of death has been interdicted.
GILLESPIE, C.J., and ROBERTSON, J., concur.
NOTES
[1] Excessive bail shall not be required, and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great.
[2] Sec. 2. Be it further enacted, That in all cases where any person, or persons, upon conviction of crime, shall, or may be punished with death, the jury may, in their discretion, in their verdict, declare that the penalty, or punishment, shall be imprisonment in the Penitentiary for life; but if the jury shall omit to so declare the penalty in their verdict, then the Court shall pronounce the death penalty. (Acts of 1871, page 79.)
[3] Section 2017 Mississippi Code 1942 Annotated (1956).

Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished as follows: If the offense attempted to be committed be capital, such offense shall be punished by imprisonment in the penitentiary not exceeding ten years; if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted.
[4] In capital cases the defendant and the state shall each be allowed twelve peremptory challenges. In cases not capital the accused and the state each shall be allowed six peremptory challenges; but all peremptory challenges by the state shall be made before the juror is presented to the prisoner; and in all cases the accused shall have presented to him a full panel before being called upon to make his peremptory challenges.
[5] When any person charged with a capital crime, or with the crime of manslaughter, shall have been arraigned and the plea of not guilty entered, it shall be the duty of the court, upon the demand of the accused or the district attorney, to cause to be drawn, in open court, from the jury-box as many names as the judge in his discretion may direct, not to be less than forty; and it shall be the duty of the clerk to issue a special venire facias, commanding the sheriff to summon the persons whose names are so drawn, to attend the court on a particular day to be named in the writ; and in case the special venire be exhausted without a jury being impaneled from those summoned and in attendance, the court shall proceed to make up the jury for the trial of the case from the regular panel and tales jurors who may have been summoned for the day; and if, after exhausting said regular panel and tales jurors, a competent jury be not obtained, the court shall direct the sheriff to summon forthwith as many tales jurors as shall be sufficient to complete the jury.

And in the event that there should be no such box, or the same should be mislaid, or the names therein have been exhausted, then the court may order a special venire facias to be issued by the clerk, directing the sheriff to summon as many jurors as may be necessary, not less than forty, and, after exhausting the same, to impanel the jury as hereinbefore directed; and the slips containing the names of all jurors drawn or summoned on a special venire, and not impaneled on the jury, shall be returned to the box from which they were drawn immediately after the jury shall be impaneled; and if the special venire be not demanded, the jury shall be composed of the regular venire for the week and as many talesmen and bystanders as may be required, to be summoned under the order of the court.
[6] Any person indicted for a capital crime shall, if demanded by him by motion in writing before the completion of drawing of the special venire, have a copy of the indictment and list of the special venire summoned for his trial delivered to him or his counsel at least one (1) entire day before said trial.
[7] Inasmuch as today's decision is fully retroactive, any prisoner now under a sentence of death, the judgment as to which is final, may file a petition for writ of habeas corpus in the superior court inviting that court to modify its judgment to provide for the appropriate alternative punishment of life imprisonment or life imprisonment without possibility of parole specified by statute for the crime for which he was sentenced to death. Petitions should be filed in the court of territorial jurisdiction in the first instance and transferred by that court to the sentencing court in the event the court with territorial jurisdiction was not the sentencing court.

The issue of the right to bail in cases in which the law has heretofore provided for the death penalty has been raised for the first time by the People and amici curiae on petition for rehearing. Although this question was never an issue in this case, we deem it appropriate to note that article I, section 6, of the California Constitution and section 1270 of the Penal Code, dealing with the subject of bail, refer to a category of offenses for which the punishment of death could be imposed and bail should be denied under certain circumstances. The law thus determined the gravity of such offenses both for the purpose of fixing bail before trial and for imposing punishment after conviction. Those offenses, of course, remain the same but under the decision in this case punishment by death cannot constitutionally be exacted. The underlying gravity of those offenses endures and the determination of their gravity for the purpose of bail continues unaffected by this decision. Accordingly, to subserve such purpose and subject to our future consideration of this issue in an appropriate proceeding, we hold that they remain as offenses for which bail should be denied in conformity with article I, section 6, of the Constitution and Penal Code section 1270 when the proof of guilt is evident or the presumption thereof great. (footnote 45, 6 Cal.3d 628 at 657, 100 Cal. Rptr. 152 at 171-172, 493 P.2d 880 at 899-900 (1972).)
[1] Alabama, Arkansas, Florida, Georgia, Louisiana, Tennessee and Texas.
[2] See Capler v. State, 268 So.2d 338, decided contemporaneously herewith.