334 So.2d 369 (1976)
EX parte Robert Daniel DENNIS.
No. 49153.
Supreme Court of Mississippi.
May 18, 1976.
Rehearing Denied July 13, 1976.
*370 David Shoemake, Collins, for appellant.
A.F. Summer, Atty. Gen. by John C. Ellis, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SMITH and BROOM, JJ.
PATTERSON, Presiding Justice, for the Court:
Robert Dennis was indicted for armed robbery in Covington County. He was incarcerated and refused bail. Thereafter a petition of habeas corpus was filed before the chancery judge of the district challenging the legality of his confinement and praying reasonable bail pending trial. The habeas corpus petition was dismissed on the basis of Mississippi Code Annotated section 1-3-4 (Supp. 1975) hereinafter set forth.
Dennis contends that he is entitled to bail since a conviction of armed robbery no longer permits the death penalty and therefore is not a capital case within the ambit of Article 3, Section 29, Mississippi Constitution (1890). He also argues that Mississippi Code Annotated section 1-3-4 (Supp. 1975), upon which the trial judge relied in denying bail, was beyond legislative powers since that body cannot amend the constitution by redefining its express terms.
Article 3, Section 29, Mississippi Constitution (1890) provides:
Excessive bail shall not be required, and all persons shall, before conviction, *371 be bailable by sufficient sureties, except for capital offenses where the proof is evident or presumption great. (Emphasis added.)
Prior to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), this section enjoyed comparative repose. In 1641 Massachusetts advanced a unique American principle of nondiscretionary right to bail before conviction in all offenses except those capital when proof of guilt was evident or the presumption great. This idea was followed and adopted by a great majority of states in their constitutions. 44 Miss. L.J. 565 (1973), and Orfield, Criminal Procedure Under the Federal Rules, section 46:1 (1967). The prohibition against excessive bail came into our present constitution by mesne enactments beginning with that of April 7, 1798, relating to the Mississippi Territory. Since then the constitutional right to bail before conviction, less the exception, has become so fundamental that it is favored by the public policy of this state. Royalty v. State, 235 So.2d 718 (Miss. 1970); Resolute Ins. Co. v. State, 233 So.2d 788 (Miss. 1970); and Ex Parte Oliver, 127 Miss. 208, 89 So. 915 (1921).
The controversies concerning bail prior to Furman were largely directed to the quantum of evidence required to warrant its denial; that is, whether in fact the proof was evident and the presumption great. The prevailing reason for denying bail in capital cases was that pretrial incarceration was necessary for the accused's appearance at trial since it was thought that an accused would forfeit his bond by flight rather than risk death by a jury verdict.
Pre-Furman cases of our state, as well as a great majority elsewhere, dealt with bail and bond sufficient to insure the accused's presence for trial. Indeed, the very purpose of bail is to insure the accused's appearance. Royalty v. State, supra; Brown v. State, 217 So.2d 521 (Miss. 1969); and Ex Parte Goldsby, 121 Miss. 479, 83 So. 673 (1920); of interest, Ex Parte Hamilton and Ex Parte Eubanks, dissent, 65 Miss. 147, 153, 3 So. 241 (1887). The justifiable premise for bail is that its denial punishes prior to a guilty verdict while an accused is clothed with the presumption of innocence. Royalty v. State, supra; and Dean v. State, 173 Miss. 254, 160 So. 584 (1935).
More recently the bail controversies, engendered by Furman, supra, have centered upon whether the abolition of the death penalty under then existing state laws likewise abolished the prohibition against bail in crimes, previously capital, when the proof was evident and the presumption great. We became involved with the issue in Hudson v. McAdory, 268 So.2d 916 (Miss. 1972), and more recently in Blackwell v. Sessums, 284 So.2d 38 (Miss. 1973). Neither was the legislature spared the problem. It responded by enacting Chapter 576, Laws of 1974, Regular Session. Among its provisions is Section 1-3-4 (Supp. 1975).[1]
This case brings into question bail and bond for the appellant's appearance for trial which, hopefully, will not be confused with pretrial preventive detention of recidivists or with the circumstances existing at the time of Hudson and Blackwell. At that time the death penalty provisions of criminal statutes had been barred by Furman and the legislature had not enacted criminal statutes within the leeway of that case for which the death penalty could be inflicted. This case has arisen subsequent to the legislative act reenacting the death penalty for certain crimes and removing it from others.
*372 The first question to be decided is whether the legislature intended by Section 1-3-4 to retain armed robbery within the classification of capital crimes for which bail can be denied. In this determination consideration must be given to the simultaneous withdrawal of the death penalty from the robbery statute, other concurrent enactments, and the rule expressed in Hudson, supra.
The terms within quotation marks of Section 1-3-4 are used within the following statutes of the Code (perhaps others) pertaining to criminal trials:
13-5-73, Oath of jurors and bailiffs in capital cases;
13-5-77, Special venire facias to issue in certain criminal cases;
97-1-7, Attempt to commit offenses  punishment;
99-15-17, Compensation of counsel  amount;
99-15-27, Copy of indictment and special venire served to be given in capital cases;
99-15-43, Change of venue  capital cases;
99-15-47, Joint indictments  severance in felonies; and
99-17-3, Peremptory challenges  number allowed.
"Capital offenses" also appears in Article 3, Section 29, Mississippi Constitution (1890). Each of the statutes, then of the 1942 Code, received extensive consideration in Hudson, supra, resulting in the following decision:
It therefore becomes apparent that it is necessary to retain the classification "capital offenses," "capital crimes" and similar references so that utter chaos and confusion in the administration of criminal justice would not be the result of the abolition of the death penalty in certain classes and categories of crimes. (268 So.2d at 921).
The protection of criminal procedures was the foundation reason of the Hudson decision. The procedural status quo was maintained though the death penalty could not be inflicted because of the interposition of federal power through the United States Supreme Court.[2] However, the historic definition of a capital case as one permitting the death penalty was retained. We held that capital offenses when used in the statutes meant a class of cases wherein the legislature had authorized the death penalty, stating:
... The Legislature has done this by prescribing the death penalty as punishment for certain crimes. .. ." (268 So.2d at 922)
and
... a capital case is any case where the permissible punishment prescribed by the Legislature is death... ." (268 So.2d at 923)
At the time of Furman, Hudson and Blackwell, the statute for armed robbery included the death penalty. This was removed in Chapter 576, Laws of 1974, Regular Session, specifically Mississippi Code Annotated section 97-3-79 (Supp. 1975). When the legislature enacted Sections 1-3-4 and 97-3-79 in 1974 the construction we had often given "capital offenses" was within its knowledge. By passing legislation establishing the death penalty in some crimes and removing it from others, the previous definition we had given a "capital offense" or similar terms was implicitly adopted. Crosby v. Ochsner Medical Foundation, 276 So.2d 661 (Miss. 1973); and Kittrell v. O'Flynn, 203 Miss. 164, 33 So.2d 628 (1948). Moreover, the concluding sentence in Section 1-3-4 states that "capital murder" shall denote criminal offenses punishable by death, *373 thus tacitly acknowledging the two categories of crime.
We are of the opinion the legislative intent was to draw a clear distinction between the present life imprisonment statute (previously permissive of either life imprisonment or death) and the death penalty statutes permitting only that punishment. We think the legislative purpose of the distinction was to eliminate the confusion that had arisen from "capital offenses" and similar terms existing in the statutes at the time of Furman and presently remaining therein. Its intention was to preserve the criminal procedures formerly associated with the trial of serious criminal offenses where the permitted punishment was either life imprisonment or death, but which presently permit as the maximum only life imprisonment. Armed robbery is in this last category. The seriousness of the crime, though its punishment was mitigated, nevertheless required the special standards to be maintained. We conclude the legislature in its wisdom did not intend by Section 1-3-4 to retain armed robbery within the class of capital offenses for which bail could be denied when it removed the death penalty from it.
We are of the further opinion that the legislature had no authority to amend the constitution by redefining the term "capital offenses" found in Article 3, Section 29, Mississippi Constitution (1890). The term is clear and unambiguous. In Ex Parte Fortenberry, 53 Miss. 428 (1876), the term had been defined as one which permitted the death penalty. The Constitution of 1890 was adopted long prior to any doubt concerning the meaning of the term. Subsequent to the Constitution of 1890 it has been redefined just as before. Shorter v. State, 257 So.2d 236 (Miss. 1972). This definition was more recently acknowledged and reaffirmed in Hudson, supra. The construction of a constitutional section is of course ascertained from the plain meaning of the words and terms used within it. State Teachers' College v. Morris, 165 Miss. 758, 144 So. 374 (1932); Green v. Weller, 32 Miss. 650 (1856). See also In Re Advisory Opinion to the Governor, 223 So.2d 35 (Fla. 1969). If there be no ambiguity, there of course exists no reason for legislative or judicial construction. The ambiguity, if there could be such, in Article 3, Section 29, "capital offenses," resulted from Furman which barred the death penalty, but left the definition unchanged. However, this doubtful ambiguity has been removed by post-Furman criminal statutes which again permit death as a punishment for certain crimes.
We repeat, it is not our opinion that the legislature intended to amend the constitution, since it is aware, as we are, that the constitution can only be modified by constitutional amendment. It is a document of the populace subject only to be amended by the authority which established it. A statute differs in that it expounds the will of the legislature within, but not beyond, constitutional limitations. The constitution does not grant specific legislative powers, but rather limits them. Farrar v. State, 191 Miss. 1, 2 So.2d 146 (1941). We conclude that the legislature did not in any manner, expressly or impliedly, change the meaning of "capital offenses" of the constitution so as to include within it punishment for armed robbery which does not permit death as a penalty.
We are therefore of the opinion the lower court erred in denying the petitioner bail and that the cause should be remanded for that purpose. We do not mean to state that the trial court is without discretion in granting an appropriate bond. In State v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972), there appear items for consideration which express the federal notion that the purpose of bail is to reasonably assure the appearance of the accused for trial. They are:
... (1) the seriousness of the crime charged against the defendant, (2) the extent of the punishment prescribed *374 by the legislature, (3) the defendant's criminal record if any and previous record on bail if any, (4) his reputation and mental condition, (5) the length of his residence in the community, (6) his family ties and relationships, (7) his employment status, record of employment and his financial condition, (8) the identity of responsible members of the community who would vouch for defendant's reliability and (9) any other factors indicating defendant's mode of life, or ties to the community bearing on the risk of failure to appear... . (268 So.2d at 926).
These criteria are not exact and are not intended to be the only standards that may be used in considering bail, but they are relevant, we think, to indicate that discretion is still left to the judges and that offenders accused of crimes, formerly capital, are not automatically put upon the street to prey upon others.
The cause is reversed and remanded so that reasonable bail for the appellant might be fixed.
The case was considered by a conference of the justices en banc.
REVERSED AND REMANDED.
INZER, P.J., and SUGG, BROOM and LEE, JJ., concur.
WALKER, J., GILLESPIE, C.J., and SMITH and ROBERTSON, JJ., dissent.
WALKER, Justice (dissenting);
I respectfully disagree with the holding of the majority in this case.
To construe a provision of the Constitution so narrowly and to treat it as being completely unadaptable to circumstances unforeseeable when it was adopted is to do an injustice to its authors.
The time has come when this Court should reconsider the historical definition of the term "capital offenses" as used in the Mississippi Constitution, Article 3, Section 29 (1890).[1] Similar language to that section is found in (1) The Northwest Ordinance, Article 2 (1787); (2) the Mississippi Constitution, Article 1, Section 17 (1817); (3) the Mississippi Constitution, Article 1, Section 17 (1832); (4) the Mississippi Constitution, Article 1, Section 8 (1869); and (5) was finally written in the present Mississippi Constitution of 1890.
Prior to 1875, the only punishment imposed for certain high-grade crimes was death. However, in 1875 the Legislature enacted The Act of 1875, Chapter LVIII, Section 2, which fixed the penalty for murder (and some other crimes) at death unless the jury, by their verdict, fixed the sentence at life. After this enactment, it was claimed that an accused was entitled to bail in every case. In Ex Parte Fortenberry, 53 Miss. 428 (1876), the Court observed:
Counsel for the relator insist with great earnestness, that, inasmuch as the giving of bail is a constitutional right by the provisions (§ 8 of art. 1) of the Bill of Rights, `except for capital offences, when the proof is evident or presumption great;' and inasmuch as by the statutes of the State it is left discretionary with the jury, upon conviction of the highest grade of crimes known to our laws, to inflict death or imprisonment for life at their pleasure,  there are no longer any offences necessarily capital in this State, and that consequently there is a constitutional right to bail in all cases. (53 Miss. at 430). (Emphasis added).
The Court held that the offense was nevertheless capital. However, it is significant *375 to note that the Court recognized that capital offenses were "... the highest grade of crimes known to our laws... ."
The evil which gave birth to Section 29 of the Constitution of 1890 was the fear that a person would be placed in jail for a minor offense and held without bail for a long period without a trial. However, the framers of the Constitution recognized that there were offenses of such magnitude that bail should not be allowed where the proof of guilt was evident or the presumption great and referred to these as "capital offenses." This terminology was used, in my opinion, since at that time all of the more serious crimes carried the death penalty. The fact that some crimes which have heretofore been punishable by a maximum penalty of death and which now carry a maximum penalty of life does not lessen the severity of the offense and the need to deny bail in those instances. There are valid constitutionally acceptable reasons for denying bail to a person who commits a violent or heinous crime when the proof of his guilt is evident or the presumption great. One, of course, is to assure his presence at trial. Another, is the protection of the general public from persons who have demonstrated their dangerous propensities and lack of care for the wellbeing of others. In this instance, the right of the general public to be safe from such an individual outweighs the right of that person to be at liberty on bail.
I am of the opinion that the authors of the Constitution of 1890 intended for the term "capital offense" as used in Section 29 thereof to refer as much to the gravity and seriousness of the offense as they did to the then existing penalty of death; and, that the classification of what constitutes a capital offense is a proper legislative function provided that such classification is limited to those cases which are considered to be the highest grade of crimes known to our law and the maximum penalty for which includes either death or imprisonment for life.
This is consistent with Hudson v. McAdory, 268 So.2d 916 (Miss. 1972), where it was held that a defendant was not entitled to bail as a matter of right even though the death penalty could not be inflicted due to the United States Supreme Court's ruling in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In Hudson, this Court said:
The Constitution of Mississippi neither defines the term `capital offenses' appearing in Section 29 thereof, nor prescribes the punishment for these or any other crimes; therefore, the designation of `capital offenses' was left to the Legislature. The Legislature has done this by prescribing the death penalty as punishment for certain crimes. This designation by the Legislature is as effective today as before Furman. The classification of crimes as capital is a legislative rather than a judicial function. (268 So.2d at 922-923). (Emphasis added).
Hudson, supra, was an open invitation to the Legislature to exercise its legislative function of classifying crimes and this they did by the enactment of Mississippi Code Annotated section 1-3-4 (Supp. 1975) which methodically defines the term "capital cases and capital offenses." That section provides:
The terms `capital case', `capital cases', `capital offense', `capital offenses', `capital crime' when used in any statute shall denote criminal cases, offenses and crimes punishable by death or imprisonment for life in the state penitentiary. The term `capital murder' when used in any statute shall denote criminal cases, offenses and crimes punishable by death.
In my opinion, the lower court properly denied the defendant bail pending his trial on a charge of armed robbery which carries a maximum penalty of life imprisonment and which is without question a *376 crime of the highest grade known to our law.
I strongly feel that the majority has committed error in reversing the judgment of the lower court.
GILLESPIE, C.J., and SMITH and ROBERTSON, JJ., join in this dissent.
NOTES
[1] The terms "capital case", "capital cases", "capital offense", "capital offenses", "capital crime" when used in any statute shall denote criminal cases, offenses and crimes punishable by death or imprisonment for life in the state penitentiary. The term "capital murder" when used in any statute shall denote criminal cases, offenses and crimes punishable by death. (Emphasis added.)
[2] Special concurring opinion, Hudson, supra.
[1] "Excessive bail shall not be required, and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." (Emphasis added).