375 So.2d 1019 (1979)
Rena LEE
v.
Robert "Tot" LAWSON, Sheriff of Pike County, Mississippi.
No. 51628.
Supreme Court of Mississippi.
October 10, 1979.
*1020 Mack Brabham, McComb, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and WALKER, JJ.
WALKER, Justice, for the Court:
This is an appeal from the County Court of Pike County, Mississippi, wherein the appellant filed a petition for a writ of habeas corpus alleging that she was indigent and unable to afford any sum of money for a bail bond and praying that she be released on her own recognizance. The lower court reduced her bond from $10,000 to $2,500, but refused to release her on her own recognizance. The appellant has perfected this appeal from the order denying her release on her own recognizance.
The principal assignment of error is that Article 3, Section 29 of the Constitution of 1890 of the State of Mississippi and Sections 99-5-1, et seq., Mississippi Code of 1972 as amended are invalid, in that requiring an indigent defendant to post a money bail for pretrial release violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.
The appellant, Rena Lee, was arrested on April 14, 1979, on the charge of aggravated assault. She was adjudicated indigent and counsel was appointed for her preliminary hearing in the City Court of McComb, bond being set at $50,000. On April 18, 1979, the preliminary hearing was held, the appellant was bound over to the October Term of the Pike County Circuit Court, and bond was reduced to $10,000. The appellant then filed a petition for writ of habeas corpus seeking release on her own recognizance. After a short hearing, the county judge refused to order her release on her own recognizance, but reduced her bail to $2,500, which appellant is still unable to post. From that order, Rena Lee has appealed.
*1021 Article 3, Section 29 of the Mississippi Constitution of 1890 reads: "Excessive bail shall not be required, and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." This constitutional section has been interpreted to provide a non-discretionary right to bail before conviction for all offenses, except those offenses punishable by death when the proof of guilt is evident or the presumption of guilt is great. The constitutional right to bail before conviction, less the exception, has become so fundamental that it is favored by the public policy of this State. Ex Parte Dennis, 334 So.2d 369 (Miss. 1976); Royalty v. State, 235 So.2d 718 (Miss. 1970); Resolute Ins. Co. v. State, 233 So.2d 788 (Miss. 1970).
The purpose of allowing bail is to secure the presence of the accused at trial. Ex Parte Dennis, supra; Royalty v. State, supra; Brown v. State, 217 So.2d 521 (Miss. 1969). The justifiable premise for bail is that its denial punishes the accused prior to a guilty verdict while he is clothed with the presumption of innocence. Ex Parte Dennis, supra; Royalty v. State, supra; Dean v. State, 173 Miss. 254, 160 So. 584 (1935).
However fundamental this right to bail is, the fixing of bail, whether it be in an amount certain or by recognizance, is left to the sound discretion of the trial judge. His judgment in that regard will not be disturbed unless there is a showing of manifest error or abuse of discretion. Wells v. State, 288 So.2d 860 (Miss. 1974). In Wells, an indigent accused argued he should have been released on his own recognizance, as he was unable to make a surety bond or post a cash bond in any amount. This Court found no merit in this contention because there was no showing of manifest error or abuse of discretion by the lower court.
The appellant has made essentially the same claim. Rena Lee, the nineteen-year-old indigent accused, has been incarcerated since April 14, 1979, solely because of her poverty. If she had been able to raise $250, the ten percent fee charged by professional bondsmen for posting a $2,500 bond, she could have been released. She claims the bail statutes, Sections 99-5-1, et seq. of the Mississippi Code of 1972, as amended, deny her the equal protection and due process rights guaranteed by the Fourteenth Amendment of the United States Constitution, because the statutes make no provision for release on personal recognizance.
Although the appellant admits there are no Mississippi or United States Supreme Court decisions directly deciding the issue, the argument posed by the appellant is persuasive. In 1956 the United States Supreme Court decided in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), that indigents could not be deprived of the benefits of a state's system of appellate review by a requirement that appellants purchase and submit a transcript. In Justice Black's opinion that announced the Court's judgment, there is very broad language that indicates the Griffin rule might extend to the bail system. "In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color." (351 U.S. at 17, 76 S.Ct. at 590).
The first suggestion that the Griffin rule might apply to the financial barriers of the bail system came from the dissenting judges in the case itself:
... Some [accuseds] can afford bail, some cannot. Why fix bail at any reasonable sum if a poor man can't make it?
The Constitution requires the equal protection of the law, but it does not require the States to provide equal financial means for all defendants to avail themselves of such law. (351 U.S. at 29, 76 S.Ct. at 595).
In Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218 (Douglas, Circuit Justice, 1960), and Bandy v. United States, 82 S.Ct. 11, 7 L.Ed.2d 9 (Douglas, Circuit Justice, 1961), there is persuasive authority that Griffin would have application in the bail field.[1] *1022 Deciding on Bandy's application for release without financial security in 1960, Justice Douglas, citing Griffin, posed this question:
Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom... . I approach this application with the conviction that the right to release is heavily favored and that the requirement of security for the bond may, in a proper case, be dispensed with. (81 S.Ct. at 198).
In the 1961 Bandy opinion, Justice Douglas' conviction was stronger:
Further reflection has led me to conclude that no man should be denied release because of indigence. Instead, under our constitutional system, a man is entitled to be released on "personal recognizance" where other relevant factors make it reasonable to believe that he will comply with the orders of the Court. (82 S.Ct. at 13).
In the 1960's there was a concerted effort to restructure the bail system. An example of one such effort is the Bail Reform Act of 1966, 18 U.S.C.A. § 3146. The stated purpose of this Act was:
... to revise the practices relating to bail to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges, to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest.
The Act incorporates a presumption favoring personal recognizance release, unless the judicial officer determines that such a release will not reasonably assure the appearance of the person as required. In the latter instance, the Act requires a mechanical consideration of priorities among various other modes of release, including the execution of a bail bond with sufficient sureties, or the deposit of cash in lieu thereof.
A number of states have enacted legislation providing for a similar approach to the bail problem for indigents. See Annotation, 78 A.L.R.3d 780. Florida Rule of Criminal Procedure 3.130(b)(4) provides for several alternative means of pretrial release, but unlike the Bail Reform Act, does not express a preference for personal recognizance release. The Florida Bar (Re Florida Rules of Criminal Procedure), 343 So.2d 1247 (Fla. 1977).
In a class action challenging the constitutionality of the Florida rule, the Fifth Circuit found the rule to be facially constitutional. Pugh v. Rainwater, 572 F.2d 1053 (1978). The plaintiffs had challenged the rule because it did not express a presumption against money bail and in favor of other forms of release. The majority opinion quoting Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), stated that:
... federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. (Citation omitted)....
The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. (Citation omitted). Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an *1023 accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is `excessive' under the Eighth Amendment. (Citation omitted).
Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant... .
The Court in Pugh held that such requirement as is necessary to provide reasonable assurance of the accused's presence at trial is constitutionally permissible. Any requirement in excess of that amount would be inherently punitive and run afoul of due process requirements. The Court also held that incarceration of those who cannot raise a money bail, without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements. (572 F.2d at 1057).
As stated above, the majority in Pugh found the Florida rule facially constitutional. However, they opted to abstain from considering whether it was unconstitutional as applied. The panel which had first heard the case had held that the Florida rule violated the Equal Protection clause of the Fourteenth Amendment, because the rule did not entitle pretrial detainees to a presumption against the imposition of money bail to secure their appearance at trial. Pugh v. Rainwater, 557 F.2d 1189 (5th Cir.1977). The dissent in the later en banc opinion felt the Florida rule wholly lacking in safeguards to insure that indigents are not discriminated against, even inadvertently, in the decision-making process. (557 F.2d at 1066). The four dissenting judges felt there is manifestly a constitutional necessity for a rebuttable presumption against money bail as applied to indigent pretrial detainees, under established equal protection principles. (572 F.2d at 1066). Noting that the judicial officer's discretion, once exercised, is reviewable only for abuse, the incarcerated defendant bearing the burden of proof, they felt the majority had chosen "too frail a vessel" for protecting the equal protection rights of indigents. (572 F.2d at 1067). See Yetter, The Florida Rules of Criminal Procedure, 1971 Amendments, 5 Fla.St.U.L.Rev. 241, 246-47 (1977).
A consideration of the equal protection and due process rights of indigent pretrial detainees leads us to the inescapable conclusion that a bail system based on monetary bail alone would be unconstitutional.
However, the Mississippi bail system provides for release of pretrial detainees on terms other than monetary bail.
SECTION 99-5-11. Justices of the peace may take recognizance or bond  certificate of default  alias warrant.
All justices of the peace and all other conservators of the peace are authorized, whenever a person is brought before them charged with any offense not capital for which bail is allowed by law, to take the recognizance or bond of such person, with sufficient sureties, in such penalty as the justice or conservator of the peace may require, for his appearance before such justice or conservator for an examination of his case at some future day. And if the person thus recognized or thus giving bond, fail to appear at the appointed time, it shall be the duty of the justice or conservator to return the recognizance or bond, with his certificate of default, to the court having jurisdiction of the case, and a recovery may be had therein by scire facias, as in other cases of forfeiture. The justice or other conservator shall also issue an alias warrant for the defaulter.
SECTION 99-15-3. Conservators of peace  power to take bonds and recognizances  forfeiture.
Any conservator of the peace has power to take all manner of bonds and recognizances from persons charged on affidavit with crimes and offenses, for their appearance in the circuit court to answer thereto, as well as for crimes and offenses committed in their presence. If any person fail to give bond or enter into recognizance, with the sureties prescribed, when required to do so by a conservator of the peace, he shall be committed to the county jail, there to remain until he comply or be otherwise discharged by due *1024 course of law. Every bond or recognizance so taken shall be returned to the circuit court before its next term. If any person so bound fail to appear in the circuit court, his bond or recognizance shall be adjudged forfeited, and otherwise proceeded with as provided by law.
Although the legislature has not provided completely comprehensive guidelines to govern the conservator's deliberations with respect to the setting of bail, in the absence of such guidelines, this phase of the administration of justice is properly the subject of judicial action.
The American Bar Association Project on Minimum Standards Relating to Pretrial Release serves as a guide to the conservator in the release decision. The standards are the result of a great deal of research and have been formulated by some of the finest observers of criminal justice in this country. Adherence to these standards will go far toward the goal of equal justice under law.
There is incorporated in these standards a presumption that a defendant is entitled to be released on order to appear or on his own recognizance. This presumption, however, does not extend to persons accused of violent and heinous crimes. We want to emphasize that not every person accused of a crime should be released on his own recognizance or nominal bail. That decision still rests in the sound discretion of the judicial officer.
The record in the case at bar is devoid of any consideration by the judicial officer of alternative forms of release. There is no evidence that there is a substantial risk of non-appearance. For that reason, we remand this case to the County Court of Pike County, with instructions for the court to consider whether a form of pretrial release other than money bail would adequately assure the defendant's presence at trial. In determining whether there is substantial risk of non-appearance, the judicial officer should take into account the following factors concerning an accused:
(1) The length of his residence in the community;
(2) His employment status and history and his financial condition;
(3) His family ties and relationships;
(4) His reputation, character and mental condition;
(5) His prior criminal record, including any record of prior release on recognizance or on bail;
(6) The identity of responsible members of the community who would vouch for defendant's reliability;
(7) The nature of the offense charged and the apparent probability of conviction and the likely sentence, insofar as these factors are relevant to the risk of non-appearance; and
(8) Any other factors indicating the defendant's ties to the community or bearing on the risk of willful failure to appear.
For the foregoing reasons, this case is remanded to the County Court of Pike County for further proceedings not inconsistent with this opinion.
REMANDED WITH INSTRUCTIONS.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] Although the Griffin rationale has not as yet been applied by the United States Supreme Court to the bail problem for indigents, that rationale has been expanding over the years. In Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the Court held it was impermissible to imprison an indigent for his failure to pay a fine upon conviction. See, also, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) [assistance of counsel]; Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) [assistance of counsel]; Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) [appearance at trial in prison garb]; Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) [filing fee for divorce].