369 So.2d 769 (1979)
Raymond G. BEARD
v.
STATE of Mississippi.
No. 51158.
Supreme Court of Mississippi.
April 18, 1979.
*770 William B. Sullivan, Laurel, for appellant.
A.F. Summer, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, SUGG and COFER, JJ.
SMITH, Presiding Justice, for the Court:
Raymond Beard was convicted of the murder of Johnnie Mae Hathorne, sometimes referred to as his common law wife, and sentenced to life imprisonment. He has appealed, contending that he is entitled to reversal because of alleged errors which he charges were committed by the Circuit Court of Jones County in the course of his trial, assigning the following:
*771 (1) The refusal of the trial court to grant his request for a preliminary hearing prior to trial and in failing to appoint counsel prior to indictment;
(2) The denial of his motion in limine and the allowing of matters of an inflammatory nature to go before the jury; and
(3) The verdict of the jury was against the overwhelming weight of the evidence.
Considering the third assignment first, the jury was justified by the evidence in finding that Beard had killed Johnnie Mae Hathorne, a woman with whom he had been living without benefit of clergy, by shooting her three times in the back as she held their baby in her arms. The homicide occurred in the dining room of the home belonging to a friend of the victim, the friend having been present and having witnessed the shooting. One Eddie Dee Kemp entered from another room in time to observe the firing of the last of the three shots, the final shot having been fired as Hathorne lay face down on the floor. Both of these witnesses testified.
In shooting Hathorne, Beard used a semiautomatic pistol. He admitted that he had shot and killed the deceased and the only defense offered was that the shooting had occurred accidentally when, Beard said, he was attempting to unload the pistol and it had begun firing and had continued to fire a number of times without the trigger having been pulled.
The eyewitness account was to the contrary, the testimony of the two persons who saw the shooting having been that they had observed Beard shooting the gun at Hathorne and pulling the trigger as he fired. Testimony of the pathologists as to the path of the bullets supports their testimony.
Moreover, expert witnesses testified as to the results of tests and experiments made with the pistol. Their testimony was clear and unequivocal: to fire the pistol it was necessary to pull the trigger for each shot. Following each shot, a fresh cartridge would be automatically inserted into the chamber but the pistol would not fire until the trigger was again pulled. The pistol could not, they testified, have begun firing and continued to fire without the trigger having been pulled as Beard had claimed. After the shooting, Beard proceeded to the police headquarters, placed the pistol on the counter and informed the officers "I have just shot my old lady three times."
There is no merit in the contention that the verdict was against the overwhelming weight of the evidence.
The second assignment relates largely to a contention on the part of Beard that the trial court should have sustained his motion to exclude any reference to the fact that the victim was holding their baby in her arms when she was shot. He contends that to allow this information to go to the jury merely served to inflame the jurors against him. We are unable to agree. The fact that the woman had her back turned and was holding her baby when she was shot in the back supports the charge that the killing was intentional, premeditated and done with malice aforethought. This circumstance, as well as others immediately surrounding the killing, was admissible as a part of the res gestae, the charge having been murder.
The first assignment consists in Beard's contention that the indictment against him should have been quashed because he had not been granted a preliminary hearing or he should be granted a preliminary hearing or that evidence after the date of the homicide should be suppressed.
Following his surrender to the officers, Beard was charged by information, in the form of an affidavit, with the murder of Hathorne and was brought before a magistrate. The magistrate discussed the case with the officers and gave Beard the Miranda warnings. No request for an attorney was made (Beard testified at his trial that he had made none) nor was there any showing or suggestion of indigency at the time. The magistrate granted bail, fixing the amount at $25,000, pending the action of the next grand jury. The contention on appeal is that what was done failed to meet "constitutional" requirements of a "preliminary hearing."
*772 The homicide was committed on March 26. Beard immediately surrendered to the officers, turned over the gun and volunteered the information that he had killed Hathorne. The proceedings before the magistrate followed and his bail was fixed in the amount of $25,000. On April 3, an indictment having been returned against Beard, the circuit court then having acquired jurisdiction of the case, appointed counsel to represent Beard.
On April 5, a continuance was requested by Beard's counsel and was granted by the court, the case being set tentatively for trial during the first week of the May term. On April 25 a motion was made to quash the indictment because "no preliminary hearing" had been held.
In Mississippi, prior to indictment, on an affidavit charging murder, the power of the magistrate is limited to (1) denying bail, (2) admitting the accused to bail and fixing the amount or (3) finding that no probable cause exists for believing that a felony has been committed and that the accused has committed it. The magistrate may neither try, convict, nor acquit in cases involving felonies and nothing the magistrate does or can do will affect the power of the grand jury to indict for the purpose of bringing the accused to trial in the circuit court.
In Mississippi, the circuit court, with its attendant grand jury, is not constantly in session. The so-called "preliminary hearing" provides an interim means for determining whether probable cause exists for holding one accused of felony until such time as the case may be acted upon by a grand jury. The power of the grand jury to indict is by no means restricted to cases involving persons who have been "bound over" by a magistrate.
In the present case, it is not suggested that the bail fixed was excessive, nor was relief sought by habeas corpus, although that remedy was available at all times. The record does not disclose whether Beard made the bond fixed by the magistrate but it does appear that he is at present at liberty under a $30,000 appearance bond made in connection with this appeal. In Mississippi the purpose of the preliminary hearing is limited to the determination of whether probable cause exists for believing that a felony has been committed and that the accused has committed it. Glass v. State, 278 So.2d 384 (Miss. 1973), Stevenson v. State, 244 So.2d 30 (Miss. 1971), McLelland v. State, 204 So.2d 158 (Miss. 1967).
In Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974), the United States Supreme Court held, in substance, that an adversary hearing is not required in order to determine whether there is probable cause for binding an accused over on a preliminary charge of felony and that if prejudice is not shown to have resulted because no preliminary hearing was conducted, the failure to hold such a hearing will not be considered reversible error. In Gerstein the Court stated:
As framed by the proceedings below, this case presents two issues: whether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention, and if so, whether the adversary hearing ordered by the District Court and approved by the Court of Appeals is required by the Constitution. [420 U.S. at 111, 95 S.Ct. at 861, 43 L.Ed.2d at p. 63].
The United States Supreme Court then disposed of the issue as follows:
Both the District Court and the Court of Appeals held that the determination of probable cause must be accompanied by the full panoply of adversary safeguards  counsel, confrontation, cross-examination, and compulsory process for witnesses... .
These adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. That standard *773  probable cause to believe the suspect has committed a crime  traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof.
.....
The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable  doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. See F. Miller, Prosecution: The Decision to Charge a Suspect with a Crime, 64-109 (1969). This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause.[23] [420 U.S. at 119-122, 95 S.Ct. at 866-867, 43 L.Ed.2d at 68-70].
Footnote [23], under Gerstein reads:
Criminal justice is already overburdened by the volume of cases and the complexities of our system. The processing of misdemeanors, in particular, in the early stages of prosecution generally are marked by delays that can seriously affect the quality of justice. A constitutional doctrine requiring adversary hearings for all persons detained pending trial could exacerbate the problem of pretrial delay. (420 U.S. at 122, 95 S.Ct. at 867, 43 L.Ed.2d at 70).
Moreover, appellant has failed to show that he suffered any harm or prejudice. In Harris v. State, 206 So.2d 829, 830 (Miss. 1968), this Court held:
There is no evidence of any harm or prejudice against the appellant by the failure to have a preliminary hearing, if there were such failure. It would have had no effect upon the trial in this cause. [Citations omitted].
Nor is failure to appoint counsel at the preliminary hearing reversible error, under the ruling in Gerstein:
Because of its limited function and its nonadversary character, the probable cause determination is not a "critical stage" in the prosecution that would require appointed counsel. The court has identified as "critical stages" those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel. (Citations omitted). (420 U.S. at 122, 95 S.Ct. at 867, 43 L.Ed.2d at 70).
In Allred v. State, 187 So.2d 28 (Miss. 1966), we said that:
Under the facts in this case, the first time an attorney was needed by the defendant was when he was presented for arraignment. The preliminary hearing was not such a "critical time" under the facts in this case as would require the Court to quash the indictment returned by the grand jury against the petitioner ... (187 So.2d at 32)
Beard was tried on May 9, more than a month after counsel had been appointed. A motion to produce and disclose was sustained by the trial court in practically its entirety, and there is no complaint that the State failed to comply with the court's order in this regard. The identity of the two eyewitnesses was known to Beard and both were available to him by subpoena. There was no showing in the course of his trial, or upon the hearing of his motion for a new trial that any prejudice resulted to Beard because of the informality of the hearing at which his bail was fixed. We have concluded that the trial court was correct in overruling the motion to quash the indictment.
The whole record discloses that Beard was fairly tried, there was ample evidence to support his conviction, and there was no reversible error committed in the trial of the case.
AFFIRMED.
*774 PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.