551 So.2d 188 (1989)
Troby Devon BENSON
v.
STATE of Mississippi.
No. 58566.
Supreme Court of Mississippi.
August 2, 1989.
Rehearing Denied October 4, 1989.
*189 Phillip W. Broadhead, Columbia, for appellant.
Mike Moore, Atty. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
Troby Devon Benson was convicted in the Circuit Court of Marion County, Mississippi, on a charge of robbery. He was adjudged a habitual offender within the meaning of Miss. Code Ann. § 99-19-81 and sentenced to a term of fifteen years in the custody of the Mississippi Department of Corrections without suspension of sentence or possibility of probation or parole. He is presently confined in the Marion County Jail, Columbia, Mississippi.
From that conviction and sentence Benson appeals, assigning as error the following:
(1) The trial court erred in not granting a mistrial and a new venire panel when, during voir dire, a potential juror stated before the entire panel that the appellant was charged as "an habitual offender".
(2) The trial court erred in allowing the state to strike black jurors over the appellant's Batson objections.
*190 (3) The trial court erred in overruling the appellant's motion to suppress the physical evidence introduced by the State at trial.
(4) The verdict of the jury was not supported by the evidence.
(5) The trial court erred in refusing the appellant's jury instruction D-3.
(6) The trial court erred in refusing to grant the motion to quash the indictment on grounds that the arrest warrant and certificate of preliminary hearing were void.
(7) The trial court erred in refusing to grant a bond for the appellant while awaiting trial and on appeal.
(8) The trial court erred in the bifurcated sentencing hearing in failing to quash the habitual offender's section of the indictment for being fatally defective.
(9) The trial court erred in the bifurcated sentencing hearing in failing to sentence the defendant to fifteen (15) years or less with eligibility for parole under § 97-3-73 of the Miss.Code of 1972 (As Amended).

I.
During the early morning hours of July 17, 1986, Shelia Rowell was working behind the counter at the Charter Food Store in Columbia, Mississippi, when a black male entered the store and asked for a salad. The man was wearing gray jogging pants with maroon stripes down the sides and a gray jacket. When the man performed some leg stretches in the store, Rowell noticed that the seam of his jogging pants was not sewn. He also had a white towel over the top of his head and one around his neck.
Rowell put the salad in the bag and informed him the price was $2.11. At that time, the man pulled the towel up from his neck to obscure his mouth, put his left hand up under his jacket and told Rowell to give him the money. He continued, "Give me the money, lady. I don't want to have to hurt you." Rowell put the bills from the cash register into the man's bag. She also complied with the demand for a carton of Kool cigarettes. The man left the store as another customer walked through the door.
Officer Charles Bryant of the Columbia Police Department went to the scene of the robbery, interviewed Rowell and took a description of the robber. Rowell described the robber as being 5 feet 6 inches to 5 feet 7 inches and weighing 140 pounds.
The following morning, while Bryant was at the police department, Rowell called and said that the man who robbed her was in the store. Upon arriving at the store, Bryant saw a black male, Troby Benson, standing in front of the cash register. Bryant gestured with his head toward the man, and Rowell nodded her head affirmatively. As Benson left the store, Bryant approached him and asked to see his identification. At this point, Sergeant Chuck Peirpont relieved Bryant, who then walked back to where Rowell was and asked her if this was the man who robbed her. She replied that there was no doubt in her mind that it was he.
The officers arrested Benson, gave him Miranda warnings and took him to jail. At the jail it was determined that Benson was 5 feet 9 inches tall and weighed 170 pounds. Benson signed a consent form allowing officers to search his apartment. Sergeant Pierpont and Officers Tolar and Bryant conducted the search, which produced two white towels, a gray jacket, an empty Kool cigarette carton and eight packs of Kool cigarettes. During a subsequent search, also with Benson's consent, officers found a pair of maroon-striped gray jogging pants, torn in the seams, under a pile of clothes in the bathtub.
Benson presented no defense and was found guilty of robbery. He was sentenced as a habitual offender under the provisions of Miss. Code Ann. § 99-19-81 to serve fifteen years in the custody of the Mississippi Department of Corrections without benefit of parole or probation. He is currently incarcerated at the Marion County Jail in Columbia, Mississippi.

II.

DID THE TRIAL COURT ERR BY REFUSING TO QUASH THE VENIRE?
During the voir dire by the State, the following exchange took place between *191 the assistant district attorney and a potential juror in the presence of the entire venire panel:
Q... . Is there anyone here who having heard my additional questions and thought about what you heard from the Judge, who could now say, "Well, yes, I have heard something about this case"?
A. (response by juror)
Q. All right, sir. This would be 
A. (James Hitt) James Hitt. It was in the  just a brief sketch in the paper came out, and I read that, a habitual offender.
(R. 99-100).
The prosecutor then asked whether Hitt could disregard what he had read in the newspaper and decide the case based on the evidence presented in court. Hitt replied, "Yes, sir." The trial court made the following inquiry:
Let me ask all members of the jury this question, requested by the parties: Mr. Hitt just made a statement of what he read in the paper. And like all of you know, newspapers, a lot of people think if its printed in the newspaper, it's got to be right, and of course, I've found from my experience about ninety percent of it is just somebody's opinion of what happened, and you go back and see who's writing those opinions and everybody's as qualified to write an opinion as I am to write about getting to the moon in a rocket. But anyway, people read papers with that assumption. Mr. Hitt stated that he read in the paper that Mr. Benson was charged, and you all have heard his statement. Is there anybody on the jury that would be influenced by what Mr. Hitt had read in the paper? Would this have any bearing or influence on any member of the jury from the statement Mr. Hitt just stated?
A. (No juror response).
Q. Mr. Benson is here to be tried, despite what the paper says, he's here to be tried on a robbery charge, as I have stated to you. And where the paper gets their information, I don't know. Is there anybody who because this was published in the paper would have any prejudice arise out of it or have it influence you in any way in your determining his guilt or innocence on the charge robbery we're here to try today? Is there anybody that this would have any influence or bearing on? If so, please raise your hand.
A. (No juror response).
The Court
Let the record show that every member of the jury assures the court that this would have no influence or bearing on their decision.
The defense then moved for a mistrial and a new jury panel, and the trial court overruled the motion. In Robinson v. State, 253 So.2d 398 (Miss. 1971), this Court held:
The voir dire on the part of the court clearly discloses that no juror felt or believed that the statement made ... . would prejudice him or prevent him from being a fair and impartial juror. Matters of this nature are left considerably in the discretion of the court and we hold that the court did not abuse its discretion but acted properly in the matter. Smith v. State, 198 So.2d 220 (Miss. 1967).
Robinson, at 400; See also West v. State, 463 So.2d 1048, 1054 (Miss. 1985); Campbell v. State, 309 So.2d 172, 176 (Miss. 1975).
After questioning the jurors in this case, the trial court determined that each could disregard Hitt's remark and decide the case on the evidence. The trial court followed a course of action identical to the one employed in Robinson; therefore, the court was within its discretion in overruling the motion for mistrial. This assignment of error, therefore, is without merit.

III.

WAS BENSON DEPRIVED OF HIS RIGHT TO BE TRIED BY A JURY SELECTED IN A RACIALLY NEUTRAL MANNER?
Out of a twenty member jury panel, eight were of the black race. The State accepted the first four black members of the panel, exercised three of its six peremptory challenges against blacks and accepted *192 a fifth black juror. The final result was a jury composed of seven whites and five blacks.
Benson contends the trial court erred in allowing the prosecution to peremptorily strike black jurors over his objections based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As stated in Taylor v. State, 524 So.2d 565 (Miss. 1988):
Under Batson, a criminal defendant makes out a prima facie case for attacking the composition of a jury panel if he can show (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen in that group; and (3) that the attendant circumstances justify an inference that the challenges were made for racially invidious purposes. The burden then shifts to the prosecution to give racially neutral explanations for each challenge.
Taylor at 566. (citations omitted).
The State gave the following reasons for each strike:
1. The prosecutor believed Mamie Flowers was "either the mother or aunt of Helen Flowers," who had been "prosecuted by the District Attorney's office about three years ago for uttering forgery in Marion County." She lived in the Expose Community, where Helen Flowers had lived.
2. Jessie McKenzie had an "unsteady work record," which in the prosecutor's experience indicated she "probably would tend to excuse other people who would commit a robbery for pecuniary gain."
3. The assistant district attorney had "personally" prosecuted members of the family of Carolyn Stepney.
These explanations are similar to the explanations found to be race-neutral in Lockett v. State, 517 So.2d 1346 (Miss. 1987). It should be reiterated that "the prosecutor's explanation need not rise to the level of justifying exercise of a challenge for cause," but may not include the prosecutor's "assumption  or intuitive judgment  that they [black jurors] would be partial to the defendant because of their share[d] race." Lockett at 1352. (quoting Batson, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88). It is the duty of the trial court to determine whether purposeful discrimination has been shown. Lockett at 1349. In the present case, the explanations given by the State satisfied the trial court. Because "a trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference [such findings] will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence." Lockett at 1350. This assignment of error, therefore, is without merit.

IV.

DID THE TRIAL COURT ERR IN OVERRULING BENSON'S MOTION TO SUPPRESS PHYSICAL EVIDENCE?
Benson admits that he consented to the search of his apartment and does not attack the validity of that search. He admitted in the suppression hearing that there is no lawful requirement to make an inventory on a voluntary search. He has failed to advance any supported ground for the reversal of the trial court's overruling his motion to suppress the fruits of the search. Clark v. State, 503 So.2d 277 (Miss. 1987); Kelly v. State, 463 So.2d 1070 (Miss. 1985). This assignment of error, therefore, is without merit.

V.

WAS THE JURY VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Recently in McFee v. State, 511 So.2d 130 (Miss. 1987), this Court repeated its standard of review for challenges to the legal sufficiency of evidence.
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the *193 case for the prosecution  in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. See e.g., Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984).
McFee at 133-134. See also Winters v. State, 449 So.2d 766 (Miss. 1984).
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
Benson's attack on the sufficiency of the evidence consists primarily of (1) his contention that the State failed to prove that Rowell gave Benson the money out of fear of some immediate injury to her person, Miss. Code Ann. § 97-3-73, and (2) his implication that Rowell was an unreliable witness because she was blind in one eye.
Rowell testified she handed the robber the money and merchandise because:
... he told me that he didn't want to have to hurt me and I told him I didn't want him to hurt me. That he  by him saying that that was to let me know that he would; or that's what I thought, that he would hurt me.
Further, she stated that Benson put his hand "up under his jacket like he had something under his jacket ..." (R. 145) It is clear that Rowell thought that personal injury would result from her failure to obey Benson's instructions. This testimony satisfies the putting-in-fear element of proof. Harper v. State, 434 So.2d 1367, 1368 (Miss. 1983). Benson presented no evidence, leaving the jury free to give "full effect" to "testimony of the witnesses against him." Rush v. State, 301 So.2d 297, 300 (Miss. 1974); York v. State, 413 So.2d 1372, 1384 (Miss. 1982).
The fact that Rowell was blind in one eye did not make her inherently unbelievable; rather, it impacted only on her credibility, which was for the jury to evaluate. Griffin v. State, 495 So.2d 1352, 1354 (Miss. 1986); Jones v. State, 381 So.2d 983, 989 (Miss. 1980).
The evidence, when viewed in the light most favorable to the State supports the jury's verdict. Norman v. State, 385 So.2d 1298, 1300-01 (Miss. 1980); Gathright v. State, 380 So.2d 1276 (Miss. 1980). This assignment of error, therefore, is without merit.

VI.

DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTION D-3?
Instruction D-3 stated that "The Court instructs the jury to find the Defendant Not Guilty." (R. 249) The rule pertaining to peremptory instructions in criminal cases was stated in Hammond v. State, 465 So.2d 1031 (Miss. 1985).
The rule for considering ... requests for peremptory instructions in criminal cases is stated in Warn v. State, 349 So.2d 1055 (Miss. 1977):
Peremptory instructions should be refused if there is enough evidence to support a verdict....
The law regarding peremptory instructions in Mississippi is stated in Cochran v. State, 278 So.2d 451, 453 (Miss. 1973):
The rule in regard to a peremptory instruction is the same in criminal and civil cases, the rule being that when all *194 the evidence on behalf of the state is taken as true, together with all sound or reasonable inferences that may be drawn therefrom if there is enough to support a verdict of conviction, the peremptory instruction must be denied.
Hammond, at 1035 (citations omitted).
As previously discussed, there was sufficient evidence to support the verdict; therefore, the trial court did not err in refusing jury instruction D-3.

VII.

DID THE TRIAL COURT ERR IN OVERRULING THE MOTION TO QUASH THE INDICTMENT?
Prior to trial, Benson filed a motion to quash the indictment alleging that the arrest warrant and the certificate of preliminary hearing were invalid. During the hearing on this motion, the parties stipulated that Benson had been arrested at Charter Food Store without a warrant; that subsequent to this arrest, an arrest warrant was issued; that a preliminary hearing was held which was presided over by Judge John Speights, not Doyle Forbes as set out on the certificate of preliminary hearing; that this certificate showed an erroneous charge of burglary; and that the grand jury of Marion County indicted Benson on a charge of robbery as a habitual offender. With these facts in mind, the trial court made the following finding and ruling:

[T]he defendant was legally and lawfully arrested on a warrantless arrest and that even though there is attached to the Motion to Quash a warrant for arrest charging Troby Devon Benson with possession of a controlled substance, it is by all parties agreed that this warrant has no bearing on the case at bar, and nobody really knows why that warrant was even issued.
* * * * * *
[T]he Court finds that the certificate of preliminary hearing does in fact show that there is probable cause to believe that Troby Benson did commit the crime of burglary and Benson did commit the crime of burglary and bound Troby Benson over to the next Grand Jury. That the Court finds that this certificate of preliminary hearing, even though incorrect, would not preclude the Grand Jury of Marion County from taking up the case of robbery against the Defendant, Troby Benson, and that if Troby Benson was being wrongfully held after his preliminary hearing while he awaited the action of the Grand Jury, his obvious remedy to rectify that wrong would have been the filing of a writ of habeas corpus, but that an error on the Justice Court level holding someone in custody, even though wrongfully, would not preclude the Grand Jury from taking up the proper case and if twelve or more members voted to indict him on the proper charges. That the Court finds that the Motion to Quash is not well taken and the same is hereby overruled.
(Emphasis added).
After having stipulated that the arrest warrant was of no effect in this case, Benson now advances before this Court the argument that the warrant vitiates his conviction. Benson's contention is incorrect, for the indictment was based on the facts presented to the grand jury, not the arrest. The trial judge's statement was clearly correct. Conn v. State, 234 Miss. 137, 105 So.2d 760, 761 (1958); Beard v. State, 369 So.2d 769, 770 (Miss. 1979); Smith v. State, 229 So.2d 551, 556 (Miss. 1969).

VIII.

DID THE TRIAL COURT ERR IN DENYING BENSON BAIL?
It is true that "[b]ail is a fundamental, constitutionally protected right." Resolute Insurance Co. v. State, 233 So.2d 788, 789 (Miss. 1970). Yet "not every person accused of a crime should be released on ... bail. That decision still rests in the sound discretion of the judicial officer." Lee v. Lawson, 375 So.2d 1019, 1024 (Miss. 1979).
However fundamental this right to bail is, the fixing of bail, whether it be in an amount certain or by recognizance, is left *195 to the sound discretion of the trial judge. His judgment in that regard will not be disturbed unless there is a showing of manifest error or abuse of discretion. Wells v. State, 288 So.2d 860 (Miss. 1974).
Lee v. Lawson, 375 So.2d 1019, 1021 (Miss. 1979). The trial court's denial of bail is not a ground for reversal of the judgment rendered against the defendant. The writ of habeas corpus was an available procedure, but was not pursued by the defendant. Also, the judge's final order recited that the defendant was a violent person. There being no showing of manifest error or abuse of discretion in the record, this Court cannot find that the trial court erred in denying Benson bail. This assignment of error, therefore, is without merit.

IX.

DID THE TRIAL COURT ERR IN SENTENCING BENSON PURSUANT TO MISS. CODE ANN. § 99-19-81?
Benson contends that the trial court erred in sentencing him as a habitual offender because (A) the habitual offender's portion of the indictment was fatally defective; and (B) because he was sentenced under a statute not alleged in the indictment.

A.
Benson contends the indictment was fatally defective because the habitual offender's language of the indictment failed to state the dates of his prior convictions. The indictment in the case at bar was sufficient under Rule 2.05, Miss.Unif. Crim.R.Cir.Ct.Prac. That rule provides as follows:
FORM OF THE INDICTMENT
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him. Formal or technical words are not necessary in an indictment, if the offense can be substantially described without them.
An indictment shall also include the following:
(1) The name of the accused;
(2) The date on which the indictment was filed in each court;
(3) A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
(4) The county and judicial district in which the indictment is brought;
(5) The date and if applicable the time, on which the offense was alleged to be committed. Failure to state the correct date shall not render the indictment insufficient;
(6) The signature of the foreman of the grand jury issuing it; and
(7) The words "against the peace and dignity of the state".
Rule 6.04, Miss.Unif.Crim.R.Cir.Ct.Prac., provides in part:
In cases involving enhanced punishment for subsequent offenses under state statutes, including but not limited to, the Habitual Criminal Statute, Miss. Code Ann. Sections 99-19-81 and 99-19-83 and the Uniform Controlled Substances Law, Miss. Code Ann. Section 41-29-147:
(1) The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offenses constituting the previous felonies, the state or federal jurisdiction of previous conviction, and the date of judgment.
The issue involved here is whether the indictment is sufficient to comply with the above rules on the enhanced punishment feature of an indictment. Our case law has preceded the adoption of the procedural rules on this point and has continuously held that the indictment on the enhanced punishment portion must "contain adequate specificity relating to the felony offense for which [defendant] allegedly had been previously convicted." Watson v. State, 291 So.2d 741, 743 (1974). Watson, supra, held that the indictment must "substantially" *196 set forth the date of judgment of the prior conviction, and the nature or description of the offense constituting the previous felony conviction. In Lay v. State, 310 So.2d 908 (Miss. 1975), this Court held that an indictment which did not supply with particularity the jurisdiction of the previous convictions was insufficient to enhance the sentence beyond that of a first offender. Lay, at pp. 910 and 914. See also, Usry v. State, 378 So.2d 635 (Miss. 1979). This decision was followed by another that held that "... Billy Ard was convicted in the State of Mississippi, of another felony, same being Cause No. 218" was an insufficient indictment to impose enhanced punishment. Ard v. State, 403 So.2d 875, 876 (Miss. 1981). None of these prior convictions supply enough information to the defendant to identify with certainty the prior convictions relied upon by the State for enhanced punishment.
The assertion made here is that the indictment is insufficient because of the failure to state the date of the previous judgments. However, that which is included in the indictment is the state, county, and city jurisdiction of the three previous convictions, the description of the offenses, the cause number in each of the three cases and the sentence of the courts. One conviction for armed robbery is asserted to be a crime of violence, and for another crime of possession of a firearm, the indictment alleges that the defendant served a two year term. The appellant here asserts that this indictment as to the enhanced sentence portion is insufficient because of the failure to state the date of the former judgments in accord with Rule 6.04, Miss.Unif. Crim.R.Cir.Ct.Prac.
While it is correct that the date of the judgment is not specifically stated in the indictment, all of the information that is contained, and specifically the cause number, afforded the defendant access to the date of the judgment. This Court holds that information pertaining to the date of the judgment was substantially set forth in the indictment and that sufficient information was afforded the defendant to inform him of the specific prior convictions upon which the State relied for enhanced punishment to comply with due process. The purpose of the above rule is fulfilled, and Benson's contention, therefore, is without merit.

B.
The indictment returned against Benson stated that the state was seeking to prove that he was a habitual offender under Miss. Code Ann. § 99-19-83. During the sentencing hearing, however, the trial court found as follows:
The Court in interpreting Section 99-19-83 finds that the sentencing of this Defendant to two sentences, even though the occurrences were separate incidences and the charges were separately brought, that he has not served separate terms of one year or more on each of these charges, as concurrent sentences would have been served simultaneously and not separate.
Therefore, the Court finds that this Defendant cannot be sentenced under Section 99-19-83. However, the Court finds from the cases of the Mississippi Supreme Court that this Defendant should be sentenced under Section 99-19-81 as he was properly noticed in the indictment that the State was charging him as a habitual offender... . And that the serving of these sentences concurrently still meets the criteria of the statute and that this Court is required by the proof offered herein to sentence this Defendant under § 99-19-81.
The trial court's ruling embodies a correct interpretation of the law. This Court has spoken to this point in a series of cases beginning with Yates v. State, 396 So.2d 629 (Miss. 1981). In Yates this Court held that where the prior convictions alleged to conform with the life in prison without parole provisions of § 99-19-83 are not proven, then a defendant may be sentenced under the maximum term without parole provisions of § 99-19-81. This holding has been recently affirmed in Ellis v. State, 520 So.2d 495 (Miss. 1988).
Benson received adequate notice that he was being charged as a habitual offender *197 and of the underlying convictions used to enhance his punishment. The trial court did not err in sentencing Benson as a habitual offender; this assignment of error, therefore, is without merit.
There being no reversible error in the trial below the jury's verdict is affirmed, together with the sentence imposed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.