LEE, J.,
for the Court:
¶ 1. The appellant, Quincy Smothers, was tried by jury in the Circuit Court of Hinds County and appeals his conviction for the crime of armed robbery in violation of Miss.Code Ann. § 97-3-79 (Rev.1994). He was subsequently sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, said sentence to run consecutively to any other sentence being served. He asserts that he is entitled to a new trial, claiming that the trial court improperly refused an instruction on the lesser offense of larceny by trick, and that the verdict was contrary to the overwhelming weight of the evidence. Finding no reversible error, we affirm.
FACTS
¶ 2. On March 26, 1996, Detective Mike Russell, an officer of the narcotics division of the Jackson Police Department with twenty-four years of experience, along with a drug task force unit, set up an undercover drug purchase. Russell was equipped with a body wire so that conversations regarding the entire transaction and the robbery were recorded and entered into evidence. Detective Russell and Stanley Kennedy, a special agent with the U.S. Department of Justice Drug Enforcement Administration, were the two witnesses called on behalf of the State.
¶ 3. Russell testified that he paged Quincy Smothers and an agreement was reached that Russell would purchase one ounce of cocaine for $1,100. This money had been appropriated as official government funds for the purchase of drugs by the Drug Enforcement Administration. The parties agreed to consummate the transaction in the K-Mart parking lot on Highway 80 in Jackson at 12:30 p.m. Russell and Smothers both testified that Russell arrived first in a pickup truck and that Smothers arrived a few minutes later driving a Cadillac. With Smothers were Danny Lowe in the front seat and Timothy Williams in the back seat. When Smothers drove into the parking lot he drove his car next to Russell’s truck and said, “Follow me.” Russell followed Smothers to the parking lot at Westgate Apartments and parked on Smothers’ side of the Cadillac.
¶ 4. Smothers got out of the Cadillac and went inside of Russell’s pickup truck to the front seat and closed the door while the other passengers stayed inside Smothers’ car. Russell testified that Smothers said to him, “What you need? A whole one?” and then asked Russell where his scales were. Russell then testified that Smothers, referring to Danny Lowe, the passenger in the front seat, voluntarily stated *889 that he did “not even know that guy.” Smothers then added, “I don’t even know that guy; he was just stranded on the highway.” According to Russell’s testimony, Smothers then handed him a bag of what was represented to be cocaine and upon weighing it, determined that it was short of the agreed upon ounce. Smothers got out of the truck to go to his Cadillac to get another piece. Russell’s testimony regarding what then happened is as follows:
When Quincy got out of the vehicle to go to his vehicle, once he opened my door he motioned like this, and then I observed the front right passenger get out of the vehicle, come around the trunk of the vehicle, and once he reached the trunk of the vehicle, I saw him reach in his waistband and pull out a weapon. He then came to my door, stuck the gun to my head and started hollering, Give me the money, give me the money, give it up. Quincy, who was standing beside him, said, You can have the dope, too. But at the same time Quincy reaches down, picks the dope up and puts it in his pocket, and Danny is still hollering, Give me the money, give me the money, get your hand up.
So I reached to get the money to give to Danny, and I’m looking at Quincy, and Quincy is grinning at him, just smiling. So — and then once I give him the money, they both turn and started trotting off to the breezeway of the apartment complex.
Russell testified that he saw Lowe and Smothers jump over a fence into a backyard after they had gone through the breezeway. Russell went on to say that the other passenger in Smothers’ truck had moved from the back seat to the driver’s seat and drove off to the back of the apartment complex in the same direction that Smothers and Lowe had gone.
¶ 5. The drug task force immediately came to Russell’s aid. The constituents looked for Smothers and Lowe but were not able to find them for several days. Neither the money, the package, nor the weapon was recovered. The testimony of Kennedy corroborated that of Russell in that Kennedy too saw Smothers and Lowe running through the breezeway and jumping over a fence into a backyard. Kennedy saw them turn and look toward him when he yelled as they ran.
¶ 6. Testifying on behalf of the defense was Danny Lowe as well as the defendant himself. Lowe had previously pled guilty to the armed robbery. Lowe said that the $1,100 was on the console and that he took it while he was holding a gun to Russell’s head. However, he testified that he was simply “protecting” himself and that what had occurred was not an “armed” robbery. Lowe said that when he approached Russell’s side of the truck that he saw Russell “slide his hand down beside that door, so my first reaction was he was going for a pistol, so that’s when I upped my pistol.” He also said that he took the dope and that he later gave Smothers $400 of the money because his car had been impounded. Lowe testified that Smothers did not know that Lowe had a gun or that a robbery was planned or contemplated. Lowe testified that he had not been stranded on the highway and picked up by Quincy Smothers and that he had known Smothers since he was small, having stayed at his house off and on.
¶ 7. As to whether the cocaine was counterfeit or not, on direct examination Lowe stated that he did not know whether it was good or not; on cross-examination, however, he stated that it was wax or counterfeit. At one point on cross-examination he said that his lawyer told him it was counterfeit; at another he said it was Williams who told him so.
¶ 8. According to Smothers, it was Timothy Williams who answered the initial page from Russell and set the deal up with Russell. Smothers said that Williams had an ounce of counterfeit cocaine, or “dummies,” and when Russell pulled up next to Smothers’ side of the car in the Westgate Apartments parking lot, Smothers asked Williams to pass the dummies to him. *890 Smothers got into the car with Russell and when Russell determined that the weight of the cocaine was off, Smothers got out of the truck. As Smothers was getting out of the truck Lowe came around Smothers’ car to the truck. Smothers said Lowe pulled the gun on Russell and said something like, “Give it up.” Smothers did not see Russell with a gun. He said that Lowe took the money from Russell. Contrary to Russell’s testimony that Smothers took the drugs and the testimony of Lowe that Lowe took them, Smothers said that he threw the dummies on the seat and ran from the truck.
ISSUES AND DISCUSSION
I. SHOULD THE TRIAL COURT HAVE GRANTED AN INSTRUCTION FOR THE DEFENSE FOR THE LESSER OFFENSE OF ATTEMPTED LARCENY BY TRICK?
¶ 9. The appellant claims that, since evidence was presented that Smothers did not know that a robbery was to occur, Smothers was attempting to trick Russell out of the money by delivering counterfeit cocaine and was therefore entitled to an instruction for the lesser offense of attempted larceny by trick.
¶ 10. Though the record does offer evidence that the appellant claims supports his attempted larceny by trick, the facts of this case do not constitute larceny by trick. “The common law crime of larceny by trick consists of obtaining possession of, but not title to, another’s property by lies, then intending fraudulently to convert the property and later doing so.” U.S. v. Chatham, 568 F.2d 445, 448 (5th Cir.1978). Larceny requires that the person obtaining possession of personal property intends to and does deprive the owner of property fraudulently obtained with no intent on the part of the owner that legal title shall pass. Russell v. State, 391 So.2d 987, 990 (Miss.1980); Dukes v. State, 181 Miss. 704, 181 So. 518 (1938). In this case Russell had every intention when he arrived at the Westgate Apartments parking lot of parting possession and title with the $1,100. This was a “given,” as there was no evidence whatsoever presented that even hinted that Russell had no intent of parting with possession and title to the money. There being no evidentiary basis for the instruction, it was properly denied. Hester v. State, 602 So.2d 869, 872 (Miss.1992). The fact that Smothers may have tried to sell Russell counterfeit cocaine, on its own, does not constitute larceny by trick.
¶ 11. Regardless, Smothers is not entitled to such an instruction. In Ivey v. State, 232 So.2d 368, 369 (Miss.1970), the lower court’s refusal of an instruction tor unarmed robbery was upheld in view of testimony showing that all three persons accused of the armed robbery acted jointly, each being responsible for the wrongful actions of the other two, including the co-defendant’s use of a knife during the armed robbery. Also, the Mississippi Supreme Court held that a lesser-included-offense instruction was not mandated by the facts in Moore v. State, 493 So.2d 1295, 1298 (Miss.1986), where the appellant had participated in an armed robbery but was not actually holding the gun. We therefore conclude that the denial of this instruction does not constitute reversible error.
II. WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 12. In determining whether a jury verdict is against the overwhelming weight of the evidence meriting a new trial, the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will it be disturbed on appeal. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (cit *891 ing McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). It has been said that on a motion for new trial the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Sinclair, 438 F.2d 50, 51 n. 1 (5th Cir.1971). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Mitchell v. State, 572 So.2d 865, 867 (Miss.1990).
¶ 13. Evidence presented indicating Smothers’ guilt and thus supporting the verdict includes the testimony of Detective Russell that Smothers (1) answered his page and agreed to meet him at K-Mart for a transaction for the purchase of drugs, (2) drove the Cadillac beside his truck at K-Mart and said, “Follow me,” (3) got out of his car at Westgate Apartments and got into Russell’s truck and handed him a bag of cocaine, (4) motioned to Danny Lowe when Smothers got out of Russell’s truck to get more drugs, (5) was standing with Lowe when Lowe put his gun to Russell’s head, (6) took the drugs and put them in his pocket while Russell was held at gunpoint, and (7) ran off with Lowe and jumped over a fence. In addition, the testimony of Detective Kennedy corroborated that of Russell in that he testified that he saw Smothers and Lowe coming down from a fence.
¶ 14. Testimony given by Danny Lowe indicating Smothers’ guilt and thus supporting the verdict includes Lowe’s admission that he and Smothers were together that day and the declaration that Smothers got out of the car and into Russell’s truck at the Westgate parking lot. He also testified that Smothers got out of the truck to get more cocaine.
¶ 15. Smothers himself testified that he was with Williams and Lowe and that Williams had informed him of plans regarding a “dope deal” for Mike Russell. Smothers admitted that he pulled up in the K-Mart parking lot and told Russell, “Follow me.” He also admitted that when he got to the Westgate Apartments that he got out of his car and took the bag of drugs to Russell and that he got out of Russell’s truck to get more drugs. Smothers also said that the reason the transaction was not handled at K-Mart was that the parking lot there was “too open.” He said he did not try to stop Lowe when he pulled the gun on Russell.
¶ 16. Evaluating the relevant evidence and construing it in the light most favorable to the verdict, as we are required to do, we conclude that the evidence is ample so that a reasonable juror could have found that Smothers was an integral part of the design and commission of this armed robbery. We find that the verdict is not against the overwhelming weight of credible evidence and that the Hinds County Circuit Court did not abuse its discretion in failing to grant a new trial.
CONCLUSION
¶ 17. Finding neither of the issues brought forth before this Court to be with merit, there is no reversible error and we affirm the judgment of the Hinds County Circuit Court.
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO RUN CONSECUTIVE TO ANY SENTENCE NOW SERVING IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.