BRIDGES, J., for the Court.
¶ 1. In the Circuit Court of Hancock County, Eric Duane Davis was convicted on a charge of robbery and was sentenced as an. habitual offender to a term of ten years in the custody of the Mississippi Department of Corrections. It is from this conviction that Davis now appeals to this Court.
STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO BECOME TAINTED DURING VOIR DIRE.
II. WHETHER THE TRIAL COURT ERRED IN FINDING DAVIS A HABITUAL OFFENDER.
III. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
FACTS
¶2. Edward Vera, a real estate agent, had lived in Hancock County for fifteen years. On the night of February 10, 2001, Vera went to have a few .drinks at The Good Time Lounge. It was at The Good Time Lounge that Vera saw an acquaintance, Eric Duane Davis, and bought Davis a beer. As he had done on a couple of other occasions, Vera left the bar with the intent of driving Davis home. On the way, the two men stopped at Vera’s house to *178 have another drink. Vera claims that it was there that Davis asked him “to help him out with some money.” When Vera informed him that he did not have any money at that time, Davis knocked Vera to the ground, where he proceeded to beat and choke Vera' with a gold chain that Vera was wearing that night. Davis continued by tying Vera with an electrical cord, and taking Vera’s car keys, approximately $200, and a gold ring from his finger. After Davis left in Vera’s Ford .Explorer, Vera wrestled himself free and then dialed 911. When the police arrived, Vera explained to the officers what had happened and described the “robber,” whom Vera only knew as “Eric.”
¶ 8. The following day, the Gulfport police stopped Vera’s missing Ford Explorer. Susan Cameron was driving the vehicle at the time and later told the officers where they could find Davis) Davis was ultimately arrested, pursuant to a warrant, and property was found matching the description given by Vera, including a briefcase, a ring, personal items and a change purse.
¶ 4. At trial, Officer Timothy Airhart, one of the officers who responded to the call on the night in question, testified that Vera looked petrified and that he had a black cord wrapped around his wrist. The officer also stated that Vera’s face and neck appeared to have abrasions and reddish marks and that his eye was beginning to turn black.
¶ 5. Davis also testified at trial and stated that Vera had bought him a beer and offered him a ride home. However, Davis testified that at Vera’s house, Vera made a sexual proposition. After Davis told him that he was not interested, Vera continued and pulled money out of his pocket repeating that he wanted Davis to perform anal sex on him and that he wanted Davis to “rough him up‘a little bit and tie him up.” According to Davis, Vera gave him the money before Davis tied him up and when Davis was unable to perform, he made an excuse about needing more alcohol. Vera then handed him his car keys.
¶ 6. In rebuttal, Vera refuted this testimony.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO BECOME TAINTED DURING VOIR DIRE.
¶ 7. Davis contends that the jury became tainted when a prospective juror, Mr. Steiner, stated he knew Vera, had dealings with him and had always found him to be a credible person. Immediately following the statements, a motion for a mistrial was made by defense counsel, but the court reserved ruling on the issue. Later, during the State’s voir dire, the assistant district attorney asked a few more follow-up questions concerning Steiner’s comments. Immediately after the State tendered the panel, the court excused Steiner. Davis claims that “this was a twisted set of facts put before the jury panel and further drove the proverbial nail in the coffin at the outset of the trial.”
¶ 8. The decision to declare a mistrial rests within the sound discretion of the trial judge. Evans v. State, 725 So.2d 613, 649 (¶ 114) (Miss.1998). In Evans, the trial court did not declare a mistrial and did not admonish the jury after the improper comments of a potential juror. Id. Although the trial court failed to admonish the jury to disregard the comment, the Mississippi Supreme Court ruled that a review of the prosecutor’s follow-up questions suggested that “there was nothing to indicate that the venire panel had been biased, prejudiced or would be less than fair in discharging its duty by what had occurred.” Id. at 649 (¶ 116).
*179 ¶ 9. Similarly, in the case sub judice, a potential juror made comments concerning Vera’s credibility. The prospective juror stated: “I believe him to be credible. I don’t know if that would make a difference. I mean, my dealings with him, he seemed to be a credible person.” Davis immediately made a motion for a mistrial; the court reserved ruling on the issue. The trial court then allowed the State to expand on Steiner’s comments. Questioning the panel after the improper comments, the State received no indications that the jurors would decide the case on any basis other than the evidence that was received at trial.
¶ 10. Trial judge’s ruling stated, “Mr. Steiner simply said based upon his prior business dealings he found him to be credible, and the court is of the opinion that it does not rise to the level of tainting or prejudicing the jury that would require a mistrial.”
¶ 11. In the record, it is clear that all of the panel members, obviously including those ultimately seated, had indicated that they could base their verdict solely on the evidence presented and the instructions of the court. See Benson v. State, 551 So.2d 188, 191 (Miss.1989). Under these circumstances, the court did not abuse its discretion in determining that the venire had not been prejudiced by Steiner’s remarks and in denying the motion for a mistrial. See Tobias v. State, 724 So.2d 972, 977 (¶ 34) (Miss.Ct.App.1998) (citing Irving v. State, 361 So.2d 1360, 1368 (Miss.1978)); Wilson v. State, 574 So.2d 1324, 1332 (Miss.1990).
¶ 12. After reviewing the record, this Court finds that the trial court did not abuse its discretion by refusing to declare a mistrial after the improper statements of a potential juror. This Court is satisfied that the venire panel was not influenced by the improper comments, and any error was harmless error.
II. WHETHER THE TRIAL COURT ERRED IN FINDING DAVIS A HABITUAL OFFENDER.
¶ 13. Davis argues that because his prior offenses arose out of the same incident, the trial court erred in sentencing him as a habitual offender. During the hearing on this issue, Davis testified that he had been convicted in the Superior Court of Cobb County, Georgia, on charges of burglary and aggravated assault. The crimes had been committed “within minutes of each other.” Specifically, Davis burglarized a dwelling, and while there stole a gun, and left the house. A neighbor pursued him and he fired this weapon into the air.
¶ 14. On cross-examination, Davis acknowledged that he was “out of the home ... down the road” at the time he committed the aggravated assault, and that the victim of the latter offense was not the owner of the house, but “someone completely different.”
¶ 15. The trial judge, after summarizing the most recent case and also several Mississippi Supreme Court cases, resolved the issue in his findings of facts and conclusions of law. He stated:
In this case the defendant testified that he broke into a dwelling and left the dwelling, and then he stated that he was leaving ... [h]e further explained that a neighbor apparently saw him and someone else leaving the home they had just burglarized, and the neighbor jumped in his truck and started chasing them down the street. And at some point later in time, some unknown distance away, ... both vehicles apparently stopped and some kind of an assault took place, which constituted the aggravated assault.
*180 That appears to the Court sufficient to meet separate incidents because the aggravated assault at some point later in time and location has nothing to do with the burglary of a dwelling case.
¶ 16. Further, a prior offense may be considered under the statute even if it occurred on the same day as the instant offense as long as the two charges arose from “separate incidents.” Crawley v. State, 423 So.2d 128, 129 (Miss.1982).
¶ 17. This Court finds that the trial court, after analyzing the controlling statute and case law, properly applied them to the present case. The aggravated assault occurred after the burglary; therefore, Davis was indeed a habitual offender. This issue is without merit.
III. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 18. Davis argues that the verdict was against the overwhelming weight of the evidence. “He argues further that even though the evidence was laid out in front of them, the jury refused to consider it [sic].”
¶ 19. The standard of review, when discussing whether the verdict is against the overwhelming weight of the evidence, is abuse of discretion in failing to grant a new trial. The Mississippi Supreme Court stated:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
Montana v. State, 822 So.2d 954, 967-68 (¶ 61) (Miss.2002) (citation omitted).
¶ 20. “This case presented a classic jury issue, whether [Vera or Davis] was the more credible witness.” Scott v. State, 728 So.2d 584, 587 (¶ 24) (Miss.Ct.App.1998). The record reflects solid evidence, through the testimony of Vera and corroborating testimony of the officers, that Davis acted violently towards Vera and stole his property. The record presents substantial evidence to support the verdict.
¶ 21. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF FELONY ROBBERY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.