CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Robert L. Sanders was arrested and charged with armed robbery.
 
 [1]
 
 Following the trial, a jury found Sanders guilty of simple robbery.
 
 [2]
 
 Sanders timely appeals and alleges that the trial court erred in denying Sanders’s motion for a new trial because the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm the trial court’s judgment.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. At approximately 1:00 a.m. on December 16, 2007, Dominic McNeil and Kelly Bergman were working their shifts at a Subway sandwich shop on University Avenue in Oxford, Mississippi. Around this time, a man walked into the shop. Bergman offered to take his order, but she could not understand the man’s responses. According to Bergman, “it sounded like he was asking for change....” Bergman testified that the man’s hands “were very rough looking and very gray as if he did some sort of construction [work],...” Because she could not understand what the man was saying, McNeil approached the register to try and accommodate the man, and Bergman went to the ladies’ room.
 

 ¶ 3. McNeil described what happened next as follows:
 

 So she leaves the room[,] and it’s me and him[;] he is a little bit taller than me. He had some facial hair[,] and I noticed he had some space in his teeth[,] and he [went] to hand me some change[,] so I
 
 *1216
 
 hit cash drop which is our no sale button basically to open up the register[,] and at that point he said give me the money in the register.
 

 [[Image here]]
 

 So I didn’t believe him. I thought he was just kidding. I said, no man, you are joking. He said no man give me the money in the register.... So he put[ ] his hand in the front part of his hoody, there [were] pockets in it and he ... points through his hoody with something in there and said give me the money in the register[.] And I said, man[,] it’s just your hand. You don’t want to do this. He said no[,] it’s more than just my hand. I said, all right[,] it’s not worth dying for Subway for. So I gave him the money from the register and he [went] out ...
 

 When Bergman returned to the front, the man “was already gone” and McNeil was in the process of calling law enforcement to report the robbery.
 

 ¶ 4. The Oxford Police Department dispatched Sergeant Jimmy Williams to investigate the robbery. When he arrived, Sergeant Williams spoke with McNeil who stated that “they had been robbed.” At trial, Sergeant Williams testified that McNeil described the suspect as a black male, about six feet tall, with rough hands, and “something wrong with his teeth.” McNeil also stated that the suspect “had kind of a stutter.” Sergeant Williams testified that this information was relayed to other police units in the area.
 

 ¶ 5. The next morning, Sergeant Williams presented McNeil with a photographic lineup. However, McNeil did not identify anyone from this lineup as the man who had robbed the Subway. Within the next week, Agent Chris McAllister ■with the Mississippi Bureau of Narcotics informed Sergeant Williams that “he had a suspect that fit the description to a T of the individual [they] [were] looking for [regarding the Subway] robbery.” Ultimately, Sergeant Williams learned that this suspect was Sanders. Sergeant Williams then obtained a photograph of Sanders, assembled another photographic lineup containing Sanders’s photograph, and showed the lineup to McNeil. When presented with this new photographic lineup, McNeil immediately identified Sanders as the man who had robbed the Subway.
 

 ¶ 6. At trial, the State asked Bergman “to look around the courtroom and see if you are able to identify anybody here as the person who [robbed the Subway] that night?” Bergman responded that her “recollection [was] very vague and [that she] did not spend a lot of time looking at him....” Bergman then stated that she could not identify anyone in the courtroom with certainty as the man who had robbed the Subway.
 

 ¶ 7. The State then called McNeil to the stand. McNeil corroborated Sergeant Williams’s testimony about the photographic lineups. McNeil testified that when he looked at the second photographic lineup, he immediately identified Sanders as the robber. McNeil also identified Sanders in court as the robber. When asked whether he possessed any doubt about his identification of Sanders, McNeil answered, “No, sir.”
 

 ¶ 8. Sanders did not testify on his own behalf. The defense called one witness, Sanders’s wife, Petsey Sanders. Petsey testified that her husband was at home with her when the Subway robbery took place. Petsey also testified that her husband worked in the construction business laying concrete and that he frequently came home with concrete dust on his hands. Petsey also testified that her husband stuttered and had a missing tooth.
 

 
 *1217
 
 ¶ 9. The jury found Sanders guilty of simple robbery. The trial court sentenced Sanders to fifteen years in the custody of the MDOC, with three years suspended. Sanders timely appeals and alleges that the guilty verdict is against the overwhelming weight of the evidence.
 

 STANDARD OF REVIEW
 

 ¶ 10. This Court has articulated the following standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence:
 

 “[Tjhis Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.”
 
 Collins v. State,
 
 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000) (quoting
 
 Dudley v. State,
 
 719 So.2d 180, 182(¶9) (Miss. 1998)). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” [M] (quoting
 
 Dudley,
 
 719 So.2d at 182(119)).
 

 Carle v. State,
 
 864 So.2d 993, 998(¶18) (Miss.Ct.App.2004).
 

 WHETHER THE VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 11. Sanders asserts that this Court should reverse his conviction and remand for a new trial because the evidence failed to warrant a guilty verdict. Sanders bases this assertion on his defense theory of misidentification. In turn, the State submits that substantial proof existed to support the jury’s guilty verdict.
 

 ¶ 12. In addressing this assignment of error, we note that factual disputes at trial “are properly resolved by the jury and do not mandate a new trial.”
 
 Jones v. State,
 
 791 So.2d 891, 895(¶ 12) (Miss.Ct.App.2001) (quoting
 
 Benson v. State,
 
 551 So.2d 188, 193 (Miss.1989)).
 

 ¶ 13. In turning again to the facts of the ease, we note that at trial, Sergeant Williams testified that right after the robbery, McNeil told law enforcement that the man who had robbed the Subway was a tall, older black male who had gray rough hands, a gap in his teeth, and a stutter. Moreover, Petsey corroborated McNeil’s description of her husband in testifying that: he often came home with concrete dust on his hands; he had a missing tooth; and he stuttered.
 

 ¶ 14. Additionally, McNeil reiterated Sergeant Williams’s testimony about the photographic lineups. Regarding his examination of the second photographic lineup, McNeil testified that he immediately identified Sanders as the robber. McNeil also identified Sanders in court as the robber.
 

 ¶ 15. In accepting as true the evidence supporting the jury’s verdict, we cannot find that the jury’s guilty verdict is so against the overwhelming weight of the evidence as to sanction an unconscionable injustice.
 
 See Carle,
 
 864 So.2d at 998(¶ 18). As a result, we cannot find that the trial court abused its discretion in denying Sanders’s motion for a new trial.
 

 ¶ 16. This issue lacks merit.
 

 ¶ 17. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE ROBBERY AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THREE YEARS SUSPENDED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAFAYETTE COUNTY.
 

 
 *1218
 
 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . See Miss.Code Ann. § 97-3-79 (Rev.2006).
 

 [2]
 

 .
 
 See
 
 Miss.Code Ann. § 97-3-73 (Rev.2006).